1 | ROB BONTA
Attorney General of California
2 | CHRISTOPHER H. FINDLEY
Supervising Deputy Attorney General
3 | ERIC MIERSMA
Deputy Attorney General
4 | State Bar No. 190819
  600 West Broadway, Suite 1800
5 | San Diego, CA 92101
  P.O. Box 85266
6 | San Diego, CA 92186-5266
Telephone: (619) 738-9061
7 | Fax: (619) 645-2061
E-mail: Eric.Miersma@doj.ca.gov
8 | *Attorneys for Defendants*
*R. Mojica, S. Sawyer, M. Lotersztain, M.D., F.*
9 | *Montegrande, M.D., California Department of*
*Corrections and Rehabilitation, and M. Atchley*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **BILAL ADOM,** | 4:22-cv-07150-JSW |
| Plaintiff, | |
| v. | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| **CDCR, et al.,** | |
| Defendants. | Judge:     The Honorable Jeffrey S. White<br>Trial Date:  None Set<br>Action Filed: 11/15/2022 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Memorandum Of Points And Authorities .................................................................................... 1

Introduction .................................................................................................................................... 1

Statement Of Issues........................................................................................................................ 2

Statement Of Facts ......................................................................................................................... 3

Standard Of Review ....................................................................................................................... 9

Argument ...................................................................................................................................... 10

      I.      Plaintiff Failed to Exhaust Administrative Remedies for His Claims
            Against Lotersztain, Mojica, Sawyer, and Atchley.............................................. 10

      II.    Plaintiff Cannot Meet His Burden of Proving That Defendants Were
            Deliberately Indifferent to His Health and Safety........................................... 14

            A.     Montegrande was not deliberately indifferent. .......................................... 14

            B.     Mojica was not deliberately indifferent. ................................................... 15

            C.     Atchley was not deliberately indifferent. ................................................... 16

            D.     Dr. Lotersztain was not deliberately indifferent. ....................................... 17

            E.     Sawyer was not deliberately indifferent...................................................... 18

      III.   Plaintiff Fails To Meet His Burden To Show That CDCR Discriminated
            Against Him Because Of His Disability. ............................................................. 19

      IV.   Montegrande, Lotersztain, Atchley, Sawyer, And Mojica Are Entitled To
            Qualified Immunity. ............................................................................................ 21

Conclusion ................................................................................................................................... 22

i

Defs.' Not. of Mtn. and Mtn. for Summ. Judgment (4:22-cv-07150-JSW)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Albino v. Baca*
   747 F.3d 1162 (9th Cir. June 27, 2013) ............................................................ 12, 22

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ...................................................................................... 9

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ...................................................................................... 10

*Duval v. County of Kitsap*
   260 F.3d 1124 (9th Cir. 2001) ...................................................................... 19, 20

*Farmer v. Brennan*
   511 U.S. 825 (1994) ...................................................................................... 14

*Ferguson v. City of Phoenix*
   157 F.3d 668 (9th Cir. 1998) ........................................................................ 20

*Gallardo v. Bourne*
   No. 20-cv-09184, 2023 U.S. Dist. LEXIS 88091 (N.D. Dist. Cal. May 19,
   2023) ........................................................................................................... 12

*Griffin v. Arpaio*
   557 F.3d 1117 (9th Cir. 2009) ...................................................................... 10

*Harlow v. Fitzgerald*
   457 U.S. 800 (1982) ...................................................................................... 21

*Harris v. Lake Cty. Jail*
   No. C 09-3168 SI, 2010 U.S. Dist. LEXIS 39441 (N.D. Cal. Apr. 1, 2010) ......... 20

*Hilson v. Arnett*
   No. 1:15-cv-01240-MJS (PC), 2017 U.S. Dist. LEXIS 202540 (E.D. Cal. Dec.
   8, 2017) ....................................................................................................... 19

*Jackson v. McIntosh*
   90 F.3d 330 (9th Cir. 1996) .......................................................... 14, 16, 18

*Jones v. Bock*
   549 U.S. 199 (2007) ...................................................................................... 10

1

2

**<u>TABLE OF AUTHORITIES</u>**
**(continued)**

<u>Page</u>

3

*Jonquil Thomas-Weisner v. Gipson*

4
    No. 19-cv-01999-JAH-BGS, 2022 U.S. Dist. LEXIS 106395 (S.D. Cal. June
    14, 2022) ....................................................................................................... 20

5

*Marella v. Terhune*

6
    568 F.3d 1024 (9th Cir. 2009) (the California prison system's requirements
    define the boundaries of proper exhaustion) ........................................................ 10

7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*

8
    475 U.S. 574 (1986) .................................................................................... 10

9

*O'Guinn v. Lovelock Corr. Ctr.*

10
    502 F.3d 1056 (9th Cir. 2007) ...................................................................... 19

11

*Porter v. Nussle*
    534 U.S. 516 (2002) .................................................................................... 10

12

*Rhodes v. Chapman*

13
    452 U.S. 337 (1981) .................................................................................... 14

14

*Roberts v. Beard*

15
    No. 15cv1044 WQH PCL, 2018 U.S. Dist. LEXIS 88520 ................................. 12

16

*Robinson v. Cryer*

17
    No. 20-cv-00980, 2023 U.S. Dist. LEXIS 68394 (E.D. Dist. Cal. April 19,
    2023) .............................................................................................. 11, 12

18

*Sanchez v. Vild*

19
    891 F.2d 240 (9th Cir. 1989) ............................................................... 14, 16, 18

20

*Sapp v. Kimbrell*
    623 F.3d 813 (9th Cir. 2010) ........................................................................ 12

21

*Saucier v. Katz*

22
    533 U.S. 194 (2001) .................................................................................... 21

23

*Strong v. Woodford*

24
    428 F. Supp. 2d 1082, 1086 (C.D. Cal. 2006) ................................................... 16

25

*Taylor v. List*
    880 F.2d 1040 (9th Cir. 1989) ...................................................................... 16

26

*Teters v. Washington*

27
    No. 3:18-cv-05481-RBL-JRC, 2019 U.S. Dist. LEXIS 75157 (W.D. Wash.
    Apr. 10, 2019) ........................................................................... 19, 21

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Toguchi v. Chung*
    391 F.3d 1051 (9th Cir. 2004) ........................................................................ 14, 21

*Wiggins v. Rushen*
    760 F.2d 1009 (9th Cir. 1985) ............................................................................... 20

*Woodford v. Ngo*
    548 U.S. 81 (2006) ................................................................................................. 10

**STATUTES**

42 U.S.C. § 1997e(a) .................................................................................................... 10

ADA .................................................................................................................... *passim*

ADA Title II .................................................................................................................. 19

Cal. Code Regs. tit. 15
    § 3084.1(a) ............................................................................................................. 11
    § 3084.1(b) (2018) ................................................................................................. 12
    § 3999.226 .............................................................................................................. 11
    § 3999.227(a) and (g)(1) ....................................................................................... 11
    § 3999.227(g) .......................................................................................................... 11

Cal. Code Regs. tit. 15,
    § 3999.227(g)(2) .................................................................................................... 11

California Code of Regulations Title 15 ................................................................. 10, 11

**CONSTITUTIONAL PROVISIONS**

Eighth Amendment ....................................................................................... 1, 2, 14, 18

**COURT RULES**

Fed. R. Civ. P. 56(a), (c) ................................................................................................ 9

Local Rule 133(i)(3)(ii) ................................................................................................. 11

1    **TO PLAINTIFF BILAL ADOM, IN PRO SE:**

2        **PLEASE TAKE NOTICE** that Defendants Mojica, Sawyer, Lotersztain, Montegrande,

3    Atchley, and California Department of Corrections and Rehabilitation ("CDCR") hereby move

4    this Court for summary judgment under Federal Rules of Civil Procedure 56.  This Motion is

5    based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the

6    Declarations of Mojica, Sawyer, Lotersztain, Montegrande, Atchley, and Miersma with

7    accompanying exhibits, all pleadings, exhibits, and papers on file in this action, and any other

8    matters properly before this Court.  Pursuant to the Court's Order of Partial Dismissal and of

9    Service [ECF 9], page 4, paragraph 4(d), no hearing will be held unless the Court so orders at a

10   later date.

11        Defendants seek summary judgment in their favor on all of Plaintiff's remaining claims and

12   causes of action including Plaintiff's Eighth Amendment claims for deliberate indifference

13   against Defendants Mojica, Sawyer, Lotersztain, Montegrande, Atchley, and claim against CDCR

14   for violating the Americans with Disabilities Act ("ADA") on the grounds that Plaintiff failed to

15   exhaust his administrative remedies, and that the undisputed facts demonstrate Plaintiff cannot

16   prove his claims for deliberate indifference or a violation of the ADA.  Finally, Defendants

17   Mojica, Sawyer, Lotersztain, Montegrande, Atchley also move on the ground that they are

18   entitled to qualified immunity.

19                    **MEMORANDUM OF POINTS AND AUTHORITIES**
                                    **INTRODUCTION**
20

21        Plaintiff Bilal Adom is a state-prison inmate incarcerated at Salinas Valley State Prison

22   ("SVSP").  Plaintiff brings this civil rights lawsuit against multiple Defendants alleging he was

23   improperly denied access to incontinence supplies.  Plaintiff's first cause of action alleges an

24   Eighth Amendment claim for deliberate indifference against Defendants Mojica, Sawyer,

25   Lotersztain, Montegrande, and Atchley.  Plaintiff's second cause of action alleges violations of

26   the ADA against Defendant CDCR.  The Court should grant summary judgment because Plaintiff

27   failed to exhaust his administrative remedies as to Defendants Mojica, Sawyer, Lotersztain, and

28   Atchley.  The Court should grant summary judgment on Plaintiff's claims for deliberate

1

Defs.' Not. of Mtn. and Mtn. for Summ. Judgment (4:22-cv-07150-JSW)

1   indifference because the medical defendants, Doctors Montegrande and Lotersztain, conducted

2   careful exams of Plaintiff and took proper medical action based on their exams.  The non-medical

3   Defendants, Defendants Mojica, Sawyer, and Atchley, are also entitled to summary judgment

4   because they were not involved in Plaintiff's medical care and properly followed the advice of

5   Plaintiff's doctors.  The Court should grant summary judgment in favor of CDCR on Plaintiff's

6   ADA claim because Plaintiff is now receiving incontinence supplies, and was not discriminated

7   against because of his disability.  Finally, Defendants Mojica, Sawyer, Lotersztain, Atchley,

8   Montegrande, and Lotersztain are entitled to summary judgment on the ground of qualified

9   immunity.  All other claims and defendants have been dismissed by the Court with the exception

10  of claims against Defendant Ladd who is not represented by the Attorney General's office.  The

11  Court should therefore grant summary judgment.

12                                          **STATEMENT OF ISSUES**

13          1.      A lawsuit brought by a prison inmate who has failed to properly exhaust his

14  administrative remedies must be dismissed.  Plaintiff did not properly exhaust his administrative

15  remedies against Mojica, Sawyer, Lotersztain, and Atchley.  Should the Court dismiss Plaintiff's

16  claims against Mojica, Sawyer, Lotersztain, and Atchley for failure to exhaust administrative

17  remedies?

18          2.      To prevail on an Eighth Amendment claim for deliberate indifference to health and

19  safety, a plaintiff must show that the defendant subjectively knew of and intentionally ignored a

20  substantial risk of serious harm.  Plaintiff cannot demonstrate either that he experienced a serious

21  harm, or that any Defendant was subjectively aware of and intentionally ignored a substantial risk

22  of that harm.  Are Defendants Mojica, Sawyer, Lotersztain, Montegrande, and Atchley entitled to

23  summary judgment on Plaintiff's Eighth Amendment claims for deliberate indifference?

24          3.      An inmate claiming a disability discrimination under the ADA must distinguish

25  between an allegation of a mere failure to appropriately treat his disability and an allegation that

26  he was effectively excluded from participation in some program, service, or activity because of

27  his disability.  Plaintiff alleges a failure to appropriately treat his disability, not that he was

28

                                                        2

excluded from something because of his disability.  Is Defendant CDCR entitled to summary

judgment on Plaintiff's claim that it violated the ADA?

4.    Prison officials are entitled to qualified immunity unless their conduct violates clearly

established constitutional rights.  Plaintiff cannot show that Defendants Atchley, Sawyer,

Lotersztain, Montegrande, and Mojica violated his clearly established constitutional rights.  Are

Defendants Atchley, Sawyer, and Mojica entitled to qualified immunity?

**STATEMENT OF FACTS**

Plaintiff is an inmate incarcerated at Salinas Valley State Prison ("SVSP").  (Compl., ECF

1, paragraph 4.)  Plaintiff filed his verified Complaint on November 15, 2022.  (Compl.)  Plaintiff

alleges he suffers from urinary incontinence and numerous other conditions.  (*Id*. at paragraph

18.)  Plaintiff alleges that in or around December 2020 he filed a Form 7362 medical request

complaining about incontinence.  (*Id*. at paragraph 19.)  Plaintiff alleges that between December

2020 and early 2021 he received a 14 count weekly supply of diapers while housed on Alpha

yard.  (*Id*. at paragraph 20.)  Plaintiff alleges that on May 18, 2021, Alpha yard's Primary Care

Provider issued him a permanent order for incontinence supplies.  (*Id*. at paragraph 22.)  On

August 16, 2021, Plaintiff's housing unit changed from Alpha yard to Delta yard and his

incontinence supplies were discontinued.  (*Id*. at paragraph 23; Decl. of Montegrande, paragraph

8.)  Plaintiff received his last weekly incontinence supplies from Delta yard's medical staff on

August 20, 2021.  (Compl., paragraph 24.)  Medical staff examined Plaintiff on October 1, 2021

and determined there was no corroborating data, information, or diagnosis found in Plaintiff's

health record to indicate incontinence supplies were medically necessary.  (Decl. of Sawyer, Exh.

A, Institutional Level Response, and Exh. B, Institutional Level Response and Headquarters'

Level Response; Decl. of Montegrande, paragraph 11; and Decl. of Mojica, Exh. A.)

On September 10, 2021, Plaintiff attended an off-site ophthalmology appointment with Dr.

K. Rasheed.  (Compl., paragraphs 27 and 29-30; Decl. of Montegrande, paragraph 2.)  Upon

return to SVSP, Plaintiff was seen by Dr. Montegrande, as is typical anytime an inmate visits an

outside physician.  (Decl. of Montegrande, paragraph 2.)  Plaintiff Adom presented in a

3

1   wheelchair and refused to get on the exam table for the examination.  (*Id*. at paragraph 3.)  With

2   Plaintiff's consent, Dr. Montegrande performed a standard extremity strength test and reflex test

3   while he was seated in his wheelchair.  (*Id*.)  The strength test consists of gently pushing against

4   the patient's extended arms and legs, one at a time, while asking the patient to resist the pressure

5   as best as they are able.  (*Id*.)  The strength test does not involve any striking of the patient.  (*Id*.)

6   Dr. Montegrande also performed a standard leg reflex exam by gently tapping Plaintiff's

7   legs beneath the patella to measure his reflexes.  (*Id*. at paragraph 4.)  This test is performed with

8   a small rubber reflex hammer.  (*Id*.)

9   Dr. Montegrande did not perform a full body exam.  (*Id*. at paragraph 5.)  Dr. Montegrande

10   did not examine Plaintiff for incontinence issues, or prescribe or discontinue any incontinence

11   supplies, because he was only present for a follow-up after an off-site ophthalmology

12   appointment.  (*Id*.)  Dr. Montegrande did not document the strength and reflex tests because only

13   issues related to the outside ophthalmology appointment are required to be documented.  (*Id*.)

14   The September 10, 2021 exam was the only time Dr. Montegrande saw Plaintiff.  (*Id*. at

15   paragraph 10; Compl., paragraph 67.)

16   CNA B. Rubio was present during the examination.  (Decl. of Montegrande, paragraph 6;

17   Compl., paragraphs 27-29, 35.)  Although Plaintiff alleges in his Complaint that he experienced

18   pain during the exam and was injured by the exam, Plaintiff did not complain about any pain

19   during the exam.  (Decl. of Montegrande, paragraph 6; Compl., paragraphs 32-38.)  Plaintiff's

20   medical records show no evidence of any injury caused by Dr. Montegrande's examination and

21   no evidence that Plaintiff sought any medical attention for any injuries he alleges were caused by

22   the examination.  (Decl. of Montegrande, paragraph 7.)  Plaintiff filed a grievance against Dr.

23   Montegrande on September 13, 2021.  (Compl., paragraph 40, Exh. F; Decl. of Sawyer, Exh. A.)

24   Plaintiff alleges he was advised by a correctional officer on September 17, 2021, that his

25   incontinence supplies had been discontinued.  (Compl., paragraph 42.)  On September 18, 2021,

26   Plaintiff filed a Reasonable Accommodation Request, Form 1824, requesting he be provided with

27   a weekly supply of diapers and access to laundry to exchange soiled linen. (Compl., paragraph 43,

28   Exh. C; Decl. of Mojica, paragraph 6-7, Exh. A.)  Plaintiff further requested that, if his

4

1    incontinence supplies are not provided, that he be provided with towels, trash can liners, medical

2    tape, sanitation wipes, and access to linen exchange.  (Compl., paragraph 43, Exh. C; Decl. of

3    Mojica, paragraph 7, Exh. A.)

4         Mojica was the Associate Warden of SVSP in 2021, and was a member of the Reasonable

5    Accommodation Panel ("RAP").  (Decl. of Mojica, paragraphs 1-2.)  None of the other

6    Defendants were members of the RAP.  (*Id*. at paragraph 6, Exh. A.)  One way that inmates with

7    disabilities may request an accommodation is through the CDCR reasonable accommodations

8    process by submitting a Reasonable Accommodation Request, CDCR Form 1824.  (*Id*. at

9    paragraph 3.)  The request form asks the inmate to identify the access issue for which they are

10   requesting an accommodation, explain why they are having the issue, and identify what

11   accommodation they need.  (*Id*.)

12        The RAP reviews and responds to inmate requests for accommodations.  (*Id*. at paragraph

13   4.)  The RAP considers evidence relevant to the inmate and their requested accommodation,

14   which may include the inmate's medical records and prison file, opinions from subject-matter

15   experts, and the inmate's accommodations request.  (*Id*.)

16        To resolve requests for reasonable accommodations, the RAP may require healthcare

17   services staff to verify an inmate's claimed medical disability or identify the inmate's associated

18   limitation(s).  (*Id*. at paragraph 5.)  As such, the RAP often works with medical providers to

19   determine whether a reasonable accommodation request is appropriate and not medically contra-

20   indicated.  (*Id*.)

21        The RAP reviewed Plaintiff's CDCR Form 1824 on September 29, 2021, and issued its

22   Response, signed by Mojica, on October 14, 2021.  (*Id*. at paragraph 6, Exh. A.)  The RAP noted

23   that Plaintiff was seen by medical staff on October 1, 2021, and there was no indication found for

24   incontinence supplies.  (*Id*. at paragraph 8, Exh. A.)

25        The RAP approved Plaintiff's request for accommodation with modifications.  (*Id*. at

26   paragraph 9, Exh. A.)  The RAP set forth a process whereby Plaintiff could obtain a shower as

27   soon as safety and security permits after an incontinence episode.  (*Id*.)  Any soiled clothing

28

5

1    would be processed according to biohazard and infections linen bag procedures as necessary.

2    (*Id*.)  Additional linen and clothing supplies may be required.  (*Id*.)

3         Plaintiff alleges he sent a Request for Intervention letter to Defendants Atchley and Sawyer

4    in or around mid-late September and early November 2021.  (Compl., paragraph 44.)  Plaintiff

5    alleges he was interviewed by a 3rd Watch Program Sergeant regarding the letter sent to Atchley.

6    (*Id*. at paragraph 45.)  Plaintiff alleges the Sergeant told Plaintiff he was interviewing him in

7    response to the letter he sent to the Warden.  (*Id*.)  The Sergeant said we do not have the ability to

8    give him incontinence supplies because we are not medical.  (Decl. of Miersma, paragraph 2,

9    Exh. A, Depo. of Plaintiff, pages 67:25 to 70:23.)  The Sergeant offered to help Plaintiff and

10   Plaintiff said they were custody and could give him a chrono to get some supplies.  (*Id*.)  Plaintiff

11   then asked for a week's supply of towels, some plastic and tape, and some sanitary provisions.

12   (*Id*.)  The Sergeant said he did not have those, but could and did give him three towels and three

13   boxer shorts.  (*Id*.)

14        Atchley was the Acting Warden at Salinas Valley State Prison from October 2019 to

15   February 2022.  (Decl. of Atchley, paragraph 1.)  He does not recall receiving or reviewing any

16   "Request for Intervention" letter in or around mid-late September and early November 2021 as

17   alleged by Plaintiff.  (*Id*. at paragraph 2.)  He did not have any direct contact with Plaintiff Adom.

18   (*Id*.)

19        The Warden's office receives approximately 10-20 letters per day from inmates.  (*Id*. at

20   paragraph 3.)  The letters are reviewed by office staff who attach a routing sheet and forward as

21   appropriate.  (*Id*.)  Letters are typically sent to the facility yard where they originated for further

22   handing, but are sometimes referred to appeals because they are outside of the normal grievance

23   handling process.  (*Id*.)

24        Atchley is not a medical doctor and defers to medical staff on issues of whether an inmate

25   should receive incontinence supplies.  (*Id*. at paragraph 4.)  Requests for incontinence supplies are

26   distributed by floor custodial staff at the direction of medical staff.  (*Id*.)  Atchley made no

27   changes, no alterations, and had no input on policies related to incontinence supplies while he was

28

6

Defs.' Not. of Mtn. and Mtn. for Summ. Judgment (4:22-cv-07150-JSW)

1  Warden.  (*Id*. at paragraph 5.)  He only issued policies related to custody issues, not medical
2  issues.  (*Id*.)

3       On December 29, 2021, Plaintiff saw Dr. Lotersztain.  (Compl., paragraph 49; Decl. of
4  Lotersztain, paragraph 3.)  She examined Plaintiff only this time and had no other direct
5  involvement with his treatment.  (Decl. of Lotersztain, paragraph 3.)  Dr. Lotersztain is a Chief
6  Physician for Telemedicine for CDCR working from Elk Grove, California.  (*Id*. at paragraph 1.)
7  She supervises nine telemedicine doctors.  (*Id*.)  While Dr. Lotersztain normally does not see
8  patients on a regular basis, she sometimes helps out an institution by working the medical line for
9  regular patient visits if there is a shortage of available physicians.  (*Id*. at paragraph 2.)  In 2021,
10  during the week between Christmas and New Year's Day, she was visiting SVSP to help during
11  the holidays because of staff shortages during the holiday week.  (*Id*.)

12       Dr. Lotersztain saw Plaintiff as a covering Primary Care Provider to address urinary
13  incontinence.  (*Id*. at paragraph 4.)  Plaintiff had a remote history of spinal surgery and stroke, but
14  the urinary incontinence issue was only one year old and the cause was not clear.  (*Id*.)

15       As a result, Dr. Lotersztain performed a prostate exam to check for an enlarged prostate
16  after receiving Plaintiff's permission to do so.  (*Id*. at paragraph 5.)  The prostate exam took
17  approximately 4-5 seconds.  (Decl. of Miersma, paragraph 2, Exh. A, Depo. of Plaintiff, 59:16-
18  22.)  She explained to him that a blood test showed a normal PSA (prostate-specific antigen), so
19  he probably did not have prostate cancer, but the rectal exam was to check for benign prostatic
20  hypertrophy (BPH).  (Decl. of Lotersztain, paragraph 5.)  The exam showed a mildly enlarged
21  and indurated prostate, so she prescribed Tamsulosin (Flomax).  (*Id*. at 6.)

22       Even though Plaintiff's history of incontinence was vague, and he reported that he was able
23  to urinate while awake and the incontinence happened in his dreams, Dr. Lotersztain ordered
24  temporary incontinence supplies (good for three months) as a high priority (which is fourteen
25  calendar days).  (*Id*. at 7.)  She also ordered a urine culture to rule out urinary infection.  (*Id*.)

26       Dr. Lotersztain indicated Plaintiff was very pleasant during her examination and did not
27  complain of any pain during the prostate exam.  (*Id*. at 8.)  The exam proceeded normally without
28  any issues or abnormalities.  (*Id*.)  Certified Nursing Assistant Y. Botello was present behind a

7

Defs.' Not. of Mtn. and Mtn. for Summ. Judgment (4:22-cv-07150-JSW)

1  privacy screen during the exam.  (*Id*.)  Approximately three weeks after Dr. Lotersztain's

2  examination, Plaintiff began receiving his weekly incontinence supplies and continued to receive

3  them at least through the date of his deposition on June 14, 2023.  (Decl. of Miersma, paragraph

4  2, Exh. A, Depo. of Plaintiff, 61:11-63:23.)

5      Sawyer is currently a Chief Support Executive for Health Services at SVSP.  (Decl. of

6  Sawyer, paragraph 1.)  From July 1, 2021 to August 1, 2022, she was the Acting Chief Executive

7  Officer at SVSP.  (*Id*. at paragraph 2.)  She was responsible for reviewing health care grievances

8  by inmates at the institutional level and approving decisions on grievances as recommended by

9  health care staff.  (*Id*.)  If an inmate was dissatisfied with the decision at the institutional level, a

10  process is in place to appeal the decision to the headquarters level.  She is not involved with

11  decisions at the headquarters level.  (*Id*.)

12      Sawyer's role in reviewing health care grievances is supervisory only.  (*Id*. at paragraph 3.)

13  She is not a medical doctor and does not do any medical analysis.  (*Id*.)  She does not have any

14  role in determining whether an inmate is medically eligible for any particular course of treatment.

15  (*Id*.)

16      Sawyer did not receive or review any "Request for Intervention" letter in or around mid-late

17  September and early November 2021 as alleged by Plaintiff.  (*Id*. at paragraph 4.)  She has not

18  had any direct contact with Plaintiff.  (*Id*.)

19      As Acting Chief Executive Officer of SVSP during the times relevant to this lawsuit and as

20  a current Chief Support Executive for Health Services at SVSP, Sawyer is familiar with the health

21  care grievance process at SVSP.  (*Id*. at paragraph 5.)

22      As Acting Chief Executive Officer of SVSP, Sawyer reviewed Plaintiff's CDCR 602 HC

23  (SVSP HC 21001578) as part of the Institutional Level Response.  (*Id*. at paragraph 6.)  Her

24  signature is affixed to the Institutional Level Response dated November 18, 2021.  (*Id*.)  She also

25  recognizes and can authenticate the signature of S. Gates or her designee dated February 9, 2022

26  affixed to the Headquarters' Level Response.  (*Id*.)  These records were received, reviewed, and

27  created at or near the time of Plaintiff's grievance and subsequent appeals and are kept in the

28  course of regularly conducted grievance investigation and appeals.  (*Id*.)

As Acting Chief Executive Officer of SVSP, Sawyer reviewed Plaintiff's CDCR 602 HC (SVSP HC 21001617) as part of the Institutional Level Response. (*Id*. at paragraph 7.) Her signature is affixed to the Institutional Level Response dated November 30, 2021. (*Id*.) She also recognizes and can authenticate the signature of S. Gates or her designee dated March 8, 2022 affixed to the Headquarters' Level Response. (*Id*.) These records were received, reviewed, and created at or near the time of Plaintiff Adom's grievance and subsequent appeals and are kept in the course of regularly conducted grievance investigation and appeals. (*Id*.)

As Acting Chief Executive Officer of SVSP, Sawyer reviewed Plaintiff's CDCR 602 HC (SVSP HC 21001725) as part of the Institutional Level Response. (*Id*. at paragraph 8.) Her signature is affixed to the Institutional Level Response dated December 16, 2021. (*Id*.) She also recognizes and can authenticate the signature of S. Gates or her designee dated April 25, 2022 affixed to the Headquarters' Level Response. (*Id*.) These records were received, reviewed, and created at or near the time of Plaintiff Adom's grievance and subsequent appeals and are kept in the course of regularly conducted grievance investigation and appeals. (*Id*.)

Sawyer reviewed Plaintiff's Form 602 Grievance history and there are no other grievances related to the subject matter of his Complaint except for the three referenced above and attached to the Declaration of S. Sawyer as Exhibits A (SVSP HC 21001578), B (SVSP HC 21001617), and C (SVSP HC 21001725). (*Id*. at paragraph 9.) Portions of these grievances and appeals are also attached to Plaintiff's Complaint as Exhibits A, B, and F. (*Id*.)

## STANDARD OF REVIEW

Summary judgment shall be granted where the pleadings, discovery, and affidavits show that there is no genuine dispute on any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). Material facts are those that may affect the outcome. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute concerning a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 249. Entry of summary judgment is mandated when the responding party "fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the moving party has the burden of proof on an issue at trial, he or she must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 322-23.  On an issue for which the opposing party will have the burden of proof at trial, the moving party can prevail merely by noting the absence of evidence supporting the nonmoving party's case. *Id.* at 325.  All reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ARGUMENT

I.   **PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES FOR HIS CLAIMS AGAINST LOTERSZTAIN, MOJICA, SAWYER, AND ATCHLEY.**

The PLRA states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement is mandatory and applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper" exhaustion. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).  Proper exhaustion under the PLRA requires that an inmate comply with applicable administrative guidelines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  This means that prisoners must complete the administrative review process in accordance with the applicable procedural rules that are defined by the prison grievance process itself and not by the PLRA. *See Jones v. Bock*, 549 U.S. 199, 218 (2007); see also *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (the California prison system's requirements define the boundaries of proper exhaustion). For prison inmates in California, these procedural rules are codified in Title 15 of the California Code of Regulations.

In California, Title 15 of the California Code of Regulations permits an inmate to appeal "a policy, decision, action, condition, or omission by the Department or departmental staff that

10

1    causes some measurable harm to their health, safety, or welfare." Cal. Code Regs. tit. 15, §

2    3084.1(a).  Health care grievances are governed by Title 15 of the California Code of Regulations

3    at sections 3999.225 through 3999.237.  *Robinson v. Cryer*, No. 20-cv-00980, 2023 U.S. Dist.

4    LEXIS 68394, at 9 (E.D. Dist. Cal. April 19, 2023).  To exhaust their administrative remedies, a

5    prisoner is required to proceed through two levels of review, an institutional level and a

6    headquarters level, unless otherwise excused.  Cal. Code Regs. tit. 15, § 3999.226; *Robinson*,

7    2023 U.S. Dist. LEXIS 68394, at 9.

8         The grievance is initiated by filing a CDCR Form 602 which shall "describe the specific

9    complaint that relates to their health care which they believe has a material adverse effect on their

10   health or welfare" and "shall include any involved staff member's last name, first initial, title or

11   position, and the date(s) and description of their involvement."  Cal. Code Regs. tit. 15, §

12   3999.227(a) and (g)(1); *Robinson*, 2023 U.S. Dist. LEXIS 68394, at 9.  "If the grievant does not

13   have information to identify involved staff member(s), the grievant shall provide any other

14   available information that may assist in processing the health care grievance."  Cal. Code Regs.

15   tit. 15, § 3999.227(g)(2); *Robinson*, 2023 U.S. Dist. LEXIS 68394, at 9-10.  "The grievant shall

16   document clearly and coherently all information known and available to him or her regarding the

17   issue."  Cal. Code Regs. tit. 15, § 3999.227(g); *Robinson*, 2023 U.S. Dist. LEXIS 68394, at 10.

18   (Copies of unpublished cases have been mailed to Plaintiff per Local Rule 133(i)(3)(ii).)

19        A prisoner's failure to list all staff members involved in an incident or to fully describe the

20   involvement of staff members does not necessarily preclude exhaustion of administrative

21   remedies.  *Robinson*, 2023 U.S. Dist. LEXIS 68394, at 16. (quoting *McClure v. Chen*, 246

22   F.Supp.3d 1286, 1291 (E.D. Cal. March 28, 2017) (citing *Reyes v. Smith*, 810 F.3d 654, 658 (9th

23   Cir. 2016))).  "However, 'there must be a 'sufficient connection' between the claim in the appeal

24   and the unidentified defendants such that prison officials can be said to have had 'notice of the

25   alleged deprivation' and an 'opportunity to resolve it.'"  *Id*. at 16 (quoting *McClure v. Chen*, 246

26   F.Supp.3d 1286, 1291 (E.D. Cal. March 28, 2017) (quoting *Reyes v. Smith*, 810 F.3d 654, 659 (9th

27   Cir. 2016))).  Where a plaintiff makes no reference to any specific individuals, incidents, or

28   administrative actions that violated his constitutional rights, and where the administrative

11

response to his grievance does not provide any indication that prison officials recognized the involvement of specific individuals, then the plaintiff cannot show a sufficient connection between the grievance and the unidentified defendants such that prison officials were put on notice as to the specific nature of the harm and those involved. *Robinson*, 2023 U.S. Dist. LEXIS 68394, at 17-19.

"A mere appeal to the next level of grievance review does not give notice that prison officials involved in lower levels of review are newly rolled-up into the substantive investigation of the grievance itself […]." *Gallardo v. Bourne*, No. 20-cv-09184, 2023 U.S. Dist. LEXIS 88091, at 30-31 (N.D. Dist. Cal. May 19, 2023). A plaintiff is required to initiate a separate grievance identifying each individual he alleges were deliberately indifferent for their role in deciding his other medical grievances. *Id*. at 31.

In the context of seeking summary judgment based on the failure to comply with the PLRA's exhaustion requirement, "the defendant's burden is to prove that there was an available remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. June 27, 2013). When the defendant satisfies this initial burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in this case that made the existing and generally available administrative remedies effectively unavailable to him. *Id*. If the undisputed evidence construed in the light most favorable to the prisoner demonstrates a failure to exhaust administrative remedies, then summary judgment should be granted. *Id*. at 1166.

Administrative remedies are not exhausted as to any new issue, information, or person that was not included in the originally submitted CDCR form 602. Cal. Code Regs. tit. 15, § 3084.1(b) (2018). This means that new evidence cannot be submitted in the second or third levels of appeal. *Sapp v. Kimbrell*, 623 F.3d 813, 818, 825 (9th Cir. 2010) (raising an issue for the first time at the second level of appeal does not exhaust the issue); *Roberts v. Beard*, No. 15cv1044 WQH PCL, 2018 U.S. Dist. LEXIS 88520, at 27-28; 2018 WL 2407119 at *8 (S.D. Cal. May 25, 2018) (same).

Here, Plaintiff failed to identify any individual Defendants in his three inmate grievances (CDCR 602).  Only his first grievance—SVSP HC 21001578—regarding his September 10, 2021 visit with his PCP, could reasonably be ascertained by CDCR to involve Dr. Montegrande because the response references the specific appointment with the PCP.

Plaintiff's second grievance—SVSP HC 21001617—generically references that as of September 16, 2021, he is being denied incontinence supplies.  No specific individuals or events are identified.  The Institutional Level Response and Headquarters' Level Response do not identify any of the Defendants nor is there any information that would provide a sufficient connection to any acts by the Defendants.

Plaintiff's third grievance—SVSP HC 21001725—does not reference any of the Defendants and was ultimately denied in the Headquarters' Level Response because it was a duplicate of SVSP HC 21001617 which had already been addressed and because Plaintiff was recorded as currently being provided with incontinence supplies.

Based on the review by Sawyer, these are the only grievances submitted by Plaintiff regarding the issues alleged in his Complaint.  There are no others.  None of the Defendants are expressly named by Plaintiff in his grievances, and while CDCR could infer that Dr. Montegrande was implicated in his first 602 because of the specific nature of the grievance and the date, none of the other Defendants can be determined by name or linked to Plaintiff's claim that he was denied incontinence supplies.   Indeed, all three of Plaintiff's grievances were dated in September 2021, three months before he saw Dr. Lotersztain on December 29, 2021 which was her one and only contact with him.  Moreover, as to Mojica, Sawyer, and Atchley, they were only some of many people indirectly involved through the appeals process.  Accordingly, any grievance against them needed to be specifically stated.  Thus, Defendants Lotersztain, Mojica, Sawyer, and Atchley should be dismissed because Plaintiff failed to exhaust his administrative remedies against them.

///

///

///

1

**II.    PLAINTIFF CANNOT MEET HIS BURDEN OF PROVING THAT DEFENDANTS WERE
DELIBERATELY INDIFFERENT TO HIS HEALTH AND SAFETY.**

2

3        A prison official violates the Eighth Amendment when he or she is deliberately indifferent

4   to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate

5   indifference arises when the prison official knows that an inmate faces a substantial risk of

6   serious harm and fails to take reasonable measures to abate it. *Id.* at 825. The prison official

7   must subjectively know of and disregard an excessive risk to inmate health and safety. *Toguchi v.*

8   *Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The deprivation or harm must be "unquestioned

9   and serious" and contrary to "the minimal civilized measure of life's necessities." *Rhodes v.*

10  *Chapman*, 452 U.S. 337, 347 (1981). Deliberate indifference is a high standard and a showing of

11  medical malpractice or negligence is insufficient to establish a constitutional deprivation under

12  the Eighth Amendment. *Toguchi*, 391 F.3d at 1060. Further, a Plaintiff's difference of medical

13  opinion regarding his treatment does not amount to a deliberate indifference to his serious

14  medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Jackson v. McIntosh*, 90 F.3d

15  330, 332 (9th Cir. 1996).

16        **A.    Montegrande was not deliberately indifferent.**

17        Here, Plaintiff's incontinence supplies were discontinued on August 16, 2021, when he was

18  transferred from Alpha yard to Delta yard. On October 1, 2021, medical staff determined that

19  incontinence supplies were not medically necessary and developed a different plan for treatment

20  of his incontinence which included a trial of oxybutynin for overactive bladder and urinary

21  incontinence.

22        On September 10, 2021, Dr. Montegrande saw Plaintiff for the sole purpose of checking

23  him back in from an outside eye appointment. This was not an appointment to evaluate Plaintiff's

24  urinary incontinence and Dr. Montegrande did not discontinue Plaintiff's incontinence supplies.

25  That had already been done earlier upon Plaintiff's transfer from Alpha yard to Delta yard. Dr.

26  Montegrande's treatment of Plaintiff does not rise to the level of deliberate indifference of a

27  serious medical need. It was not her role during that visit to evaluate Plaintiff for urinary

28  incontinence and she did not discontinue his supplies. Plaintiff could and did immediately seek

14

1  reinstatement of his incontinence supplies, but medical staff determined on October 1, 2021, that

2  they were not medically necessary and a different course of treatment was prescribed.  Thus, Dr.

3  Montegrande could not have been deliberately indifferent to Plaintiff by revoking his

4  incontinence supplies because they were discontinued before he saw Dr. Montegrande.

5       Plaintiff also complains about the strength test and reflex test performed by Dr.

6  Montegrande when he refused get on the exam table.  Plaintiff's hyperbolic description of the test

7  is simply not believable.  The test was performed while Plaintiff was seated in his wheelchair and

8  is a resistance test.  The test does not involve Plaintiff being struck, but requires him to push back

9  with his limbs against resistance provided by the doctor.  Despite Plaintiff's descriptions of pain

10  and injury, he did not complain during the exam, did not seek treatment for injuries caused by the

11  exam, and there is no evidence he was injured during the exam.  Dr. Montegrande's strength test

12  and reflex test also does not rise to the level of deliberate indifference.  These are standard

13  medical tests and perfectly reasonable when Plaintiff refused to get out of his wheelchair for his

14  exam.  Plaintiff consented to the tests and there is no objective evidence that he suffered any pain

15  or injury.

16       **B.    Mojica was not deliberately indifferent.**

17       Within days after seeing Dr. Montegrande, Plaintiff filed his first grievance immediately

18  followed by his Reasonable Accommodation Request.  Mojica serves on the RAP, but is not a

19  medical doctor and here deferred to medical staff on issues like incontinence supplies.  The RAP

20  also noted that Plaintiff had been seen on October 1, 2021, by medical staff who did not find

21  incontinence supplies to be medically necessary.  The RAP did however approve Plaintiff's

22  request with modifications, providing accommodations in the form of the RAP set forth a process

23  whereby Plaintiff could obtain a shower as soon as safety and security permits after an

24  incontinence episode.  Any soiled clothing would be processed according to biohazard or

25  infections linen bag procedures as necessary.  Additional linen and/or clothing supplies may be

26  required.

27  ///

28

15

Defs.' Not. of Mtn. and Mtn. for Summ. Judgment (4:22-cv-07150-JSW)

The RAP, and specifically Mojica, were not medically indifferent to Plaintiff's serious medical condition. Instead, the RAP deferred to Plaintiff's PCP who did not believe incontinence supplies were medically necessary and had instituted a different course of treatment. Even so, the RAP authorized specific accommodations for Plaintiff in the form of additional showers, handling of soiled clothing, and provision of additional linens and clothes. Mojica had no direct contact with Plaintiff but as the ADA Coordinator was responsible to see that Plaintiff's request was reviewed by the RAP. He performed his role. Plaintiff may have not agreed with the treatment, accommodations, or RAP decision, but a difference of opinion between the physician and a plaintiff-inmate does not amount to deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Here, Mojica did not ignore Plaintiff's condition, but instead reasonably relied on medical staff's opinion and provided alternative accommodations. Accordingly, Mojica was not deliberately indifferent to Plaintiff's serious medical needs.

### C.   Atchley was not deliberately indifferent.

As Warden, Atchley had no direct contact with Plaintiff, is not a medical doctor, and does not recall receiving any letters from Plaintiff. Plaintiff alleges he was seen by a Sergeant in response to his letter to the Warden, which is consistent with the process in place at the Warden's office to handle the 10-20 letters received per day. The Warden ensured that the letters were routed to the appropriate yard, and responded to by staff who would be aware of the situation. Accordingly, Warden Atchley was only involved in his capacity as a supervisor. There is no respondeat superior liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Strong v. Woodford*, 428 F. Supp. 2d 1082, 1086 (C.D. Cal. 2006) (a supervisor is generally not liable under § 1983 for the acts of a subordinate). Liability arises only upon a showing of personal participation by the supervisor. *Taylor*, 880 F.2d at 1045. "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id*. Warden Atchley cannot be liable for the alleged wrongs of those under his supervision.

16

Defs.' Not. of Mtn. and Mtn. for Summ. Judgment (4:22-cv-07150-JSW)

Even if he could, custody staff was not deliberately indifferent.  The Sergeant on Plaintiff's yard advised him that he was not part of the medical staff and could not provide him with incontinence supplies.  Instead, he did what he could at the moment and provided him with additional towels and boxer shorts.  Accordingly, Atchley nor his custody staff were deliberately indifferent to Plaintiff serious medical needs.

**D.   Dr. Lotersztain was not deliberately indifferent.**

Dr. Lotersztain was filling in for the holidays when she saw Plaintiff to evaluate him for urinary incontinence.  Given that Plaintiff's history of spinal surgery and stroke were remote, and the incontinence issue was recent, within one year, the cause of Plaintiff's incontinence was not clear.  Plaintiff's prior blood test showed that he probably did not have prostate cancer, but it did not rule out other prostate issues, like benign prostatic hypertrophy (an enlarged prostate).  With Plaintiff's consent, Dr. Lotersztain performed a routine prostate exam that lasted approximately 4-5 seconds according to Plaintiff.  The test showed mild enlargement and Dr. Lotersztain prescribed Flomax for treatment.

In addition, even though Plaintiff's history of incontinence was vague, and he reported that he was able to urinate while awake and the incontinence happened in his dreams, Dr. Lotersztain ordered temporary incontinence supplies (good for three months) as a high priority (which is fourteen calendar days).  She also ordered a urine culture to rule out urinary infection.  Approximately three weeks after Dr. Lotersztain's examination, Plaintiff began receiving his weekly incontinence supplies and continued to receive them at least through the date of his deposition on June 14, 2023.

Dr. Lotersztain was not deliberately indifferent to Plaintiff's serious medical need.  Indeed, she reviewed his file, conducted an examination, ordered tests, and otherwise took multiple efforts to determine the cause and, even when not clearly indicated, still ordered him what he wanted, which was the incontinence supplies to be provided on an expedited basis.  The five second routine prostate exam, performed with Plaintiff's consent, and without any expression of pain to medical staff during the exam, was medically necessary to determine the cause of

1  Plaintiff's incontinence.  There is no evidence Dr. Lotersztain ignored Plaintiff's serious medical

2  needs—in fact, the evidence proves the opposite.  Dr. Lotersztain cannot be said to be

3  deliberately indifferent to Plaintiff's serious medical needs.

4  **E.   Sawyer was not deliberately indifferent.**

5  Sawyer is not a medical doctor and her role was to evaluate inmate health care grievance

6  appeals at the institutional level.  She signs off on recommendations as provided by medical staff.

7  Sawyer did not have any direct involvement with Plaintiff and does not recall receiving any letter

8  from him.

9  Plaintiff submitted three grievances related to incontinence supplies within three weeks

10  during September 2021.  Each one was denied as the medical staff had determined that

11  incontinence supplies were not medically necessary and other courses of treatment were being

12  provided.  Moreover, by the time the first grievance, filed September 13, 2021, received a

13  Headquarters' Level Response February 9, 2022, Plaintiff had an active order for incontinence

14  supplies that continued uninterrupted at least until the time of his deposition in this matter on June

15  14, 2023.  The Headquarters' Level Responses to his second and third grievances were issued on

16  March 8, 2022 and April 25, 2022, and they also noted that Plaintiff had an ongoing order for

17  incontinence supplies.

18  Sawyer, in her supervisory role signing off on the Institutional Level Responses based on

19  recommendations from medical staff, cannot be said to be deliberately indifferent to Plaintiff's

20  serious medical needs.  Plaintiff's incontinence supplies were discontinued when he transferred

21  from Alpha yard to Delta yard and subsequent medical evaluations determined that incontinence

22  supplies were not merited and that other treatments were required.  Despite this, Plaintiff fixated

23  on obtaining incontinence supplies when there was no medical diagnosis recommending them.

24  Defendants were not deliberately indifferent to Plaintiff, rather Plaintiff just disagreed with the

25  courses of treatment.  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Jackson v. McIntosh*, 90

26  F.3d 330, 332 (9th Cir. 1996).  Disagreements over medical treatment are insufficient to support

27  an Eighth Amendment deliberate indifference claim.

28

18

1

2

**III.    PLAINTIFF FAILS TO MEET HIS BURDEN TO SHOW THAT CDCR DISCRIMINATED AGAINST HIM BECAUSE OF HIS DISABILITY.**

3   To state a claim under Title II of the ADA, a plaintiff must allege: (1) he is an individual

4   with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some

5   public entity's services, programs, or activities; (3) he was either excluded from participation in

6   or denied the benefits of the public entity's services, programs, or activities, or was otherwise

7   discriminated against by the public entity; and (4) such exclusion, denial of benefits, or

8   discrimination was by reason of his disability. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056,

9   1060 (9th Cir. 2007), quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).[1]

10   In the prison context, a plaintiff must show that the alleged discrimination was because of

11   plaintiff's disabilities. *Hilson v. Arnett*, No. 1:15-cv-01240-MJS (PC), 2017 U.S. Dist. LEXIS

12   202540, at *26-27 (E.D. Cal. Dec. 8, 2017).  [A] prisoner bringing a claim of disability

13   discrimination under Title II of the ADA must distinguish between an allegation of a mere failure

14   to appropriately treat his disability—which fails to state a claim—and an allegation that he was

15   effectively excluded from participation in some program, service, or activity of the public entity

16   'because of' his disability—which may state a claim. *Teters v. Washington*, No. 3:18-cv-05481-

17   RBL-JRC, 2019 U.S. Dist. LEXIS 75157, at *12-13 (W.D. Wash. Apr. 10, 2019).

18   Here, Plaintiff alleges that his disability is urinary incontinence and that he is excluded

19   from obtaining incontinence supplies because of this disability.  However, what Plaintiff is really

20   alleging is that he is dissatisfied with the medical decisions regarding the treatment that was

21   recommended related to his disability (i.e., needing incontinence supplies).  Plaintiff was not

22   excluded from incontinence supplies because he was incontinent, but rather he was denied

23   incontinence supplies because a medical provider determined that they were not medically

24   necessary.  Also, the evidence shows that Plaintiff received other treatment for his condition,

25   including Flomax.  Because this is a matter of a disagreement about treatment and not exclusion

26   for programs, services, and activities because of a disability, Plaintiff cannot recover under the

27

28   ───────────────────

[1] The ADA and the RA are decided under the same standard. *Duval v. County of Kitsap*, 260 F.3d 1124, 1135-36 (9th Cir. 2001).

19

Defs.' Not. of Mtn. and Mtn. for Summ. Judgment (4:22-cv-07150-JSW)

1    ADA.  Accordingly, the Court should therefore grant CDCR summary judgment on Plaintiff's

2    ADA claim.

3           Furthermore, Plaintiff cannot show he is entitled to either damages or injunctive relief

4    under the ADA.  Plaintiff requests injunctive relief in the form of a permanent order of

5    incontinence supplies as opposed to a temporary order for incontinence supplies.  (Compl.,

6    paragraph 85.)  Here, the evidence demonstrates that Plaintiff received incontinence supplies

7    beginning in January 2022, nearly a full year before filing his Complaint on November 15, 2022.

8    He continued to receive uninterrupted incontinence supplies at least through the date of his

9    deposition on June 14, 2023.  Claims for non-monetary relief are moot if the prisoner-plaintiff is

10   no longer subject to the alleged illegal conduct.  *Wiggins v. Rushen*, 760 F.2d 1009, 1010-11 (9th

11   Cir. 1985) ("In these circumstances, where the complainant was no longer subject to the allegedly

12   illegal activity, the complaint for an injunction became moot."); *Jonquil Thomas-Weisner v.*

13   *Gipson*, No. 19-cv-01999-JAH-BGS, 2022 U.S. Dist. LEXIS 106395, at 18 (S.D. Cal. June 14,

14   2022).

15          There is an exception to the mootness doctrine if the challenged action is in its duration too

16   short to be fully litigated prior to its cessation or expiration, and there is a reasonable expectation

17   that the same complaining party will be subjected to the same action again.  *Wiggins*, 760 F.2d at

18   1110.  However, Plaintiff has had uninterrupted access to incontinence supplies for nearly two

19   years, and nearly a year before filing his Complaint.  Plaintiff's claims under the ADA are

20   therefore moot.  Plaintiff is not entitled to injunctive relief.

21          Plaintiff is also not entitled to monetary damages.  To recover monetary damages, Plaintiff

22   must prove intentional discrimination by Defendants and the standard for intentional

23   discrimination is deliberate indifference.  (*Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th

24   Cir. 2001); *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998); *Harris v. Lake Cty.*

25   *Jail*, No. C 09-3168 SI (pr), 2010 U.S. Dist. LEXIS 39441, at *9 (N.D. Cal. Apr. 1, 2010).

26          The RAP investigated Plaintiff's Reasonable Accommodation Request and verified the

27   specific accommodations he was requesting, reviewed his medical records, and consulted with

28   appropriate experts.  The RAP noted that medical staff had determined on October 1, 2021 that

20

1   there was no indication found for incontinence supplies.  The RAP made accommodations for

2   Plaintiff by allowing him access to showers following any incontinence issues, as well as

3   handling of soiled clothing and provision of extra linens and clothes if necessary.  Plaintiff cannot

4   prove deliberate indifference, and therefore cannot show any discriminatory intent.  Plaintiff

5   therefore cannot recover damages under the ADA.

6        CDCR did not violate the ADA.  CDCR provided both medical treatment and reasonable

7   accommodations for Plaintiff's urinary incontinence, but Plaintiff disagreed with that treatment

8   and accommodation and insisted on incontinence supplies.  Under the ADA, an allegation that

9   CDCR failed to appropriately treat his disability is not a valid claim.  *Teters*, 2019 U.S. Dist.

10  LEXIS at *12-13.  Ultimately, Plaintiff also received incontinence supplies in a steady and

11  uninterrupted supply from January 2022 until at least June 2023.  Plaintiff is not entitled to either

12  injunctive relief or monetary damages under the ADA because CDCR was not deliberately

13  indifferent to his serious medical need and his claim for injunctive relief is now moot.

14  **IV.  MONTEGRANDE, LOTERSZTAIN, ATCHLEY, SAWYER, AND MOJICA ARE ENTITLED TO
15       QUALIFIED IMMUNITY.**

16       Montegrande, Lotersztain, Mojica, Sawyer, and Atchley are entitled to qualified immunity

17  in this case.  Qualified immunity protects government officials from personal liability for civil

18  damages unless their conduct violates clearly established constitutional rights.  *Harlow v.*

19  *Fitzgerald*, 457 U.S. 800, 818 (1982).  If the plaintiff fails to show that the defendant's conduct

20  violated a constitutional right, qualified immunity applies.  *Saucier v. Katz*, 533 U.S. 194, 201

21  (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

22       Montegrande and Lotersztain provided necessary and reasonable medical care to Plaintiff.

23  The fact that Plaintiff disagreed with the care is not a basis for liability under existing law.

24  *Toguchi. v. Chung*, 391 F.3d 1051, 1059-61 (9th Cir. 2004).

25       Similarly, Plaintiff cannot show that Atchley, Sawyer, and Mojica violated his

26  constitutional rights.  None of these Defendants had direct interaction with Plaintiff and each

27

28

21

Defs.' Not. of Mtn. and Mtn. for Summ. Judgment (4:22-cv-07150-JSW)

became indirectly involved solely because of their supervisory roles. Each of them performed their job and relied upon medical staff's evaluation of Plaintiff's medical claims.

Atchley, as Warden, receives 10-20 letters a day from inmates and they are reviewed by his staff and forwarded as appropriate. Here, Plaintiff alleges he was interviewed by a Sergeant because of his letter to the Warden and while the Sergeant could not provide the incontinent supplies he wanted, he did provide him with some additional towels and boxers. Atchley is entitled to qualified immunity.

Mojica, in his supervisory role of ADA Coordinator, ensured that Plaintiff's Reasonable Accommodation Request was processed appropriately and reviewed by the RAP. Mojica signed off on the final recommendation based on recommendations from medical staff and the RAP provided Plaintiff accommodations. Mojica is entitled to qualified immunity.

Sawyer, in her supervisory role as Acting Chief Executive Officer, was responsible for reviewing institutional level health care grievances and signing off on the appeals decisions based on recommendations from medical staff. Sawyer is entitled to qualified immunity.

Montegrande, Lotersztain, Atchley, Mojica, and Sawyer did not violate Plaintiff's clearly established constitutional rights. These Defendants are entitled to qualified immunity.

## CONCLUSION

Plaintiff did not exhaust his administrative remedies against Lotersztain, Atchley, Mojica and Sawyer. Plaintiff's grievances do not mention any of them by name. Lotersztain did not perform her sole exam of Plaintiff until after Plaintiff filed all of his grievances. Thus, Plaintiff has failed to exhaust his administrative remedies as to these Defendants. Defendants request an *Albino* hearing if the Court finds any disputes of material fact with respect to Plaintiff's failure to exhaust his administrative remedies.

Defendants were not deliberately indifferent to Plaintiff's serious medical needs. Dr. Montegrande only saw Plaintiff once upon his return from an outside eye appointment and was not scheduled to address any claims of urinary incontinence. Her exam, with Plaintiff's consent, included a standard strength test and reflex test when Plaintiff refused to get on the exam table

1    and there is no objective evidence Plaintiff sought treatment for alleged injuries, was actually

2    injured, or experienced any pain.  Dr. Montegrande did not discontinue Plaintiff's incontinence

3    supplies.  Dr. Montegrande was not deliberately indifferent to Plaintiff's serious medical needs.

4          Dr. Lotersztain also only saw Plaintiff once, and tried to determine the cause of his

5    incontinence by performing, with his consent, a standard prostate exam.  She prescribed Flomax

6    and issued a high priority order for incontinence supplies which Plaintiff has received

7    uninterrupted from then until at least June 14, 2023.  Dr. Lotersztain was not deliberately

8    indifferent to Plaintiff's serious medical needs.

9          Defendants Atchley, Sawyer, and Mojica each had only indirect involvement with Plaintiff

10   by virtue of their supervisory roles.  None of them are medical doctors and all of them deferred to

11   medical staff on issues of incontinence supplies.  They were not deliberately indifferent to

12   Plaintiff's serious medical needs.  Moreover, all Defendants are afforded qualified immunity

13   because they did not violate any of Plaintiff's clearly established constitutional rights.

14         Finally, CDCR did not violate the ADA.  Plaintiff received treatments and reasonable

15   accommodations for his urinary incontinence, but Plaintiff disagreed with those decisions and

16   instead sought incontinence supplies which were not medically recommended.  Ultimately,

17   Plaintiff did receive the incontinence supplies and any claim for injunctive relief is moot.

18         For all the foregoing reasons, Defendants respectfully request this Court grant Defendants'

19   Motion for Summary Judgment and dismiss Plaintiff's Complaint with prejudice.

20

21

22

23

24

25

26

27

28

1   Dated:  September 27, 2023                    Respectfully submitted,

2                                                 ROB BONTA
                                                  Attorney General of California
3                                                 CHRISTOPHER H. FINDLEY
                                                  Supervising Deputy Attorney General
4

5

6                                                 */s/ Eric Miersma*
                                                  ERIC MIERSMA
7                                                 Deputy Attorney General
                                                  *Attorneys for Defendants*
8                                                 *R. Mojica, S. Sawyer, M. Lotersztain,*
                                                  *M.D., F. Montegrande, M.D., California*
9                                                 *Department of Corrections and*
                                                  *Rehabilitation, and M. Atchley*
10

11   SF2023801143
     84170680.docx
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:   **Bilal Adom v. CDCR, et al.**          No.   **4:22-cv-07150-JSW**

I hereby certify that on <u>September 27, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

**DECLARATION OF M. ATCHLEY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMARRY JUDGMENT**

**DECLARATION OF S, SAWYER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMARRY JUDGMENT**

**DECLARATION OF R. MOJICA IN SUPPORT OF DEFENDANTS' MOTION FOR SUMARRY JUDGMENT**

**DECLARATION OF M. LOTERSZTAIN, M.D.  IN SUPPORT OF DEFENDANTS' MOTION FOR SUMARRY JUDGMENT**

**DECLARATION OF F. MONTEGRANDE, M.D. IN SUPPORT OF DEFENDANTS' MOTION FOR SUMARRY JUDGMENT**

**DECLARATION OF E. MIERSMA IN SUPPORT OF DEFENDANTS' MOTION FOR SUMARRY JUDGMENT**

**DEFENDANTS'** *RAND* **WARNING TO PLAINTIFF REGARDING OPPOSING SUMMARY JUDGMENT**

**[PROPOSED] ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users.  On September 27, 2023, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Adam M. Stoddard, Esq.
Zenere Cowden & Stoddard APC
2005 De La Cruz Blvd., Suite 240
Santa Clara, CA 95050-3026
*Attorney for Co-Defendant* Ladd Scott Ladd

Bilal Adom
T28813
Salinas Valley State Prison
P.O. Box 1050
Soledad, CA  93960-1020
*In Pro Se*


I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on September 27, 2023, at Los Angeles, California.


| J. Sissov | */s/ J. Sissov* |
|-----------|-----------------|
| Declarant | Signature |

SF2023801143
84171047.docx