Exhibit "F"

STATE OF CALIFORNIA
**HEALTH CARE SERVICES REQUEST FORM**
CDCR 7362 (Rev. 03/19)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 2 of 2

| PART I:  TO BE COMPLETED BY THE PATIENT | | | |
|---|---|---|---|
| If you believe this is an urgent/emergent health care need, contact the correctional officer on duty. | | | |
| REQUEST FOR:       MEDICAL ☐ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☒ |

NAME _Adom_

CDCR NUMBER _T28813_

HOUSING _D7-122_

PATIENT SIGNATURE

DATE _10-09-21_

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe your health problem and how long you have had the problem) _Recurring chronic spinal pain. Have not been able to obtain "FREE" NSAIDS from canteen due to lock-down. I requesting prescribed "AS NEEDED" pain management from D-Yard medical (SEE U.H.R.)_

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

STATE OF CALIFORNIA
**HEALTH CARE SERVICES REQUEST FORM**
CDCR 7362 (Rev. 03/19)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 2 of 2

| PART I:  TO BE COMPLETED BY THE PATIENT |
|---|
| If you believe this is an urgent/emergent health care need, contact the correctional officer on duty. |

REQUEST FOR:  MEDICAL ☑   MENTAL HEALTH ☐   DENTAL ☐   MEDICATION REFILL ☐

| NAME | CDCR NUMBER | HOUSING |
|---|---|---|
| Adem, Bilal | T 28813 | D7-122 |

| PATIENT SIGNATURE | DATE |
|---|---|
|  | 09/17/21 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe your health problem and how long you have had the problem) I am unable to consistently control my waist, particularly my urine at night. I've been using partial towels and plastic trash bags as diapers at night, while tying tissue and plastic around my private areas during the daytime. I'm being unnecessarily humiliated and dehumanized. Please provide reasonable accommodations!

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

STATE OF CALIFORNIA
HEALTH CARE SERVICES REQUEST FORM
CDCR 7362 (Rev. 03/19)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 2 of 2

| PART I:  TO BE COMPLETED BY THE PATIENT |
|---|
| If you believe this is an urgent/emergent health care need, contact the correctional officer on duty. |

REQUEST FOR:   MEDICAL ☑   MENTAL HEALTH ☐   DENTAL ☐   MEDICATION REFILL ☐

| NAME Helem, Bilal | CDCR NUMBER T28813 | HOUSING D7-122 |
|---|---|---|
| PATIENT SIGNATURE | | DATE 09/13/21 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe your health problem and how long you have had the problem)

I have run out of diapers (incontinent supplies)
I used my last diapers, I didn't get my supplies on
Friday (C9/10). THX!

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM

Exhibit "G"

STATE OF CALIFORNIA
REASONABLE ACCOMMODATION REQUEST
CDCR 182? (Rev. 09/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| (SVSP) | -21-781 | SEP 24 20__ HCG__ |

**\*\*\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\*\***

<u>DO NOT</u> use a CDCR 1824 to request health care or to appeal a health care decision. This
may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | HOUSING |
|---|---|---|---|
| Hilary, Bilal | T29813 | Law Porter | D7-133 |

INSTRUCTIONS:
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?

I can't completely control my urine, and their are times when I find stool in my diapers. I've worn diapers for a few months, and I received supplies weekly. Last week, my supplies were not issued and I am sitting in my linen, and unable to get new linen or diapers

WHY CAN'T YOU DO IT?

Medical has not responded to my 7362. And I've not been sent weekly to laundry to exchange my soiled linen. See M.H.R.

WHAT DO YOU NEED? My weekly supply of diapers, and access weekly, or when needed, to laundry to exchange soiled linen, is not being afforded to me. If my incontinent supplies are not provided, I'm requesting to be provided with towels. See M.H.R. plastic trash can liners, medical tape or box tape to secure the towels and plastic around my genitate areas. I'm also requesting sanitation wipes and away to linen exchange when (Use the back of this form if more space is needed)

DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?   Yes ☒   No ☐   Not Sure ☐

List and attach documents, if available:   See M.H.R. / ADA Nurse

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

| INMATE'S SIGNATURE | 09/18/21 |
|---|---|
| | DATE SIGNED |

Assistance in completing this form was provided by:

| Last Name | First Name | Signature |
|---|---|---|
| | | |

STATE OF CALIFORNIA
HEALTH CARE GRIEVANCE
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

| STAFF USE ONLY | Expedited? | ☐ Yes | ☐ No | Tracking #: |
|---|---|---|---|---|

Staff Name and Title (Print)                    Signature                    Date

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

Name (Last, First, MI): _Bilal Ifllom_   CDCR #: _73883_   Unit/Cell #: _C7-122_

SECTION A: Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

_Dissatisfied: Appeal RRP Decision_

Supporting Documents Attached. Refer to CCR 3999.227   ☒ Yes   ☐ No

Grievant Signature: _RG_   Date Submitted: _10-26-21_

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.

SECTION B: HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL. Staff Use Only   Is a CDCR 602 HC A attached?   ☐ Yes   ☐ No

This grievance has been:

☐ Rejected (See attached letter for instruction)   Date: _____   Date: _____

☐ Withdrawn (see section E)

☐ Accepted   Assigned To: _____   Title: _____   Date Assigned: _____   Date Due: _____

Interview Conducted?   ☐ Yes   ☐ No   Date of Interview: _____   Interview Location: _____

Interviewer Name and Title (print): _____   Signature: _____   Date: _____

Reviewing Authority
Name and Title (print): _____   Signature: _____   Date: _____

Disposition: See attached letter   ☐ Intervention   ☐ No Intervention

HCGO Use Only: Date closed and mailed/delivered to grievant:

| 1. Disability Code | 2. Accommodation | 3. Effective Communication |  |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions | |
| ☐ DPH ☐ DPv ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information | |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: | STAFF USE ONLY |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ "Not reached" ☐ Reached | |
| ☐ Not Applicable | ☐ Other | *See chrono notes | |
| 4. Comments: | | | |



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



### Headquarters' Level Response

**Closing Date:**      APR 2 5 2022

**To:**      AHDOM, BILAL (T28813)
Salinas Valley State Prison
P. O. Box 1020
Soledad, CA 93960-1020

**From:**      California Correctional Health Care Services
Health Care Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking #:**   SVSP HC 21001725

## RULES AND REGULATIONS
The rules governing these issues are:  California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

## HEALTH CARE GRIEVANCE APPEAL SUMMARY
In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that had had a material adverse effect upon your health or welfare for which you seek administrative remedy.

| Issue | Description |
|---|---|
| Issue:   Supplies ( Diapers ) | To reinstate incontinence supplies. |
| Issue:   Administrative ( Policy & Procedure ) | No reprisal or retaliation. |

## HEADQUARTERS' LEVEL DISPOSITION

[X] No intervention.      [ ] Intervention.

## BASIS FOR HEADQUARTERS' LEVEL DISPOSITION
Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed. These records indicate:

- Per California Code of Regulations, Title 15, Section 3999.227(e), "The grievant is limited to one issue or set of issues related to a single health care discipline that can reasonably be addressed in a single health care grievance response." Your staff complaint issue was bifurcated and addressed in health care grievance tracking number SVSP SC 21000098.
- Your issue regarding incontinence supplies will not be addressed herein as this is a duplicate issue to that in health care grievance tracking number SVSP HC 21001617, for which a decision was rendered or is pending. Per California Code of Regulations, Title 15, Section 3999.234(a)(6), a health care grievance

Note 1:  The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2:  The closing date reflects the closed, mailed/delivered date of the health care grievance.

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**                                   P.O. Box 588500
Elk Grove, CA  95758

B.AHDOM, T28813
SVSP HC 21001725
Page 2 of 2

which duplicates a health care grievance upon which a decision has been rendered or is pending is subject to rejection. The headquarters' level disposition on a health care grievance exhausts your administrative remedies.

- You are recorded as having durable medical equipment including incontinence supplies.
- If you have additional health care needs, you may access health care services by utilizing the approved processes in accordance with California Correctional Health Care Services policy.

Per California Code of Regulations, Title 15, Section 3999.226(e), "Staff shall not take reprisal against the grievant for filing a health care grievance."

Monetary compensation is outside the jurisdiction of the health care grievance process.

Durable Medical Equipment and medical supplies shall be distributed by health care staff based on medical necessity as defined in the Durable Medical Equipment and Medical Supply Formulary. The formulary was developed based on Medicare and Medicaid standards, and the policy is intended to promote consistency in the way these items are provided. All associated supplies and accessories listed in the Durable Medical Equipment and Medical Supply Formulary shall be provided to patients currently issued the Durable Medical Equipment (without an additional order) unless the establishment of additional medical necessity is required as described in the Health Care Department Operations Manual, Section 3.6.1, Durable Medical Equipment and Medical Supply.

Per California Code of Regulations, Title 15, Section 3004(a), "Inmates and parolees have the right to be treated respectfully, impartially, and fairly by all employees. Inmates and parolees have the responsibility to treat others in the same manner." Additionally, per the Health Care Department Operations Manual, Section 2.1.1, Patients' Rights, the individual patient's rights are maintained in concurrence with established medical ethics and to preserve the basic human dignity of the patient. Certain rights may be limited by reasonable application of security regulations.

While the health care grievance process is a means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

This decision exhausts your administrative remedies.

p.p. ƒⱮⱮ
Digitally signed by HCCAB
Date: 2022.04.25 11:35:32
-07'00'

April 25, 2022

S. Gates, Chief
Health Care Correspondence and Appeals Branch
Policy and Risk Management Services
California Correctional Health Care Services

Reviewed and Signed Date

Note 1:  The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2:  The closing date reflects the closed, mailed/delivered date of the health care grievance.

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA  95758

REC'D BY OOA

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

JAN 1 2 2022

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

| STAFF USE ONLY | Expedited? ☐ Yes ☑ No | Tracking #: SVSP HC 21001725 |
|---|---|---|

M. VILLANUEVA, RN

Staff Name and Title (Print)      Signature      Date 10/12/2021

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First, MI): Ahdom, Bilal | CDCR #: T28813 | Unit/Cell #: D7 122 |
|---|---|---|

SECTION A: Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

SEE ATTACHED
CDC-1824/602

Supporting Documents Attached. Refer to CCR 3999.227   ☐ Yes   ☐ No

Grievant Signature:      Date Submitted:

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.

| SECTION B: HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only | Is a CDCR 602 HC A attached? ☐ Yes ☑ No |
|---|---|

This grievance has been:

☐ Rejected (See attached letter for instruction):   Date: _____   Date: _____

☐ Withdrawn (see section E)

☑ Accepted   Assigned To: M. Villanueva   Title: HCARN   Date Assigned: 10/15/21   Date Due: 12/17/21

Interview Conducted? ☑ Yes ☐ No   Date of Interview: 12/15/2021   Interview Location: CTC-122

Interviewer Name and Title (print): M. VILLANUEVA, RN   *Signature:   Date: 12/15/2021

Reviewing Authority Name and Title (print): S. Sawyer   Signature:   Date: 12/16/21

| Disposition: See attached letter | ☐ Intervention | ☑ No Intervention |
|---|---|---|

HCGO Use Only: Date closed and mailed/delivered to grievant:

RECEIVED DEC 1 6 2021

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached ☐ Reached |
| ☑ Not Applicable | ☐ Other | *See chrono/notes |

4. Comments: Tabe 12.9, DPN

SVSP OCT 1 2 2021 HCGO

COMPLETED SVSP STAFF USE ONLY DEC 16 2021 HCGO

RECEIVED HCCAB FEB 0 1 2022

REC BY OOA

JAN 1 2 2022

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 2 of 2

Tracking #: GVSP HC 21001725

| SECTION C: | **Health Care Grievance Appeal.** If you are dissatisfied with the Institutional Level Grievance Response, explain the reason below (if more space is needed, use Section C of the CDCR 602 HC A), and submit the entire health care grievance package by mail for Headquarters' (HQ) Level health care grievance appeal review. Mail to: Health Care Correspondence and Appeals Branch, P.O. Box 588500, Elk Grove, CA 95758. |
|---|---|

Grievant Signature: _____          Date Submitted: _____

| SECTION D: | HEALTH CARE GRIEVANCE APPEAL REVIEW HQ LEVEL: Staff Use Only | Is a CDCR 602 HC A attached? ☑ Yes   ☐ No |
|---|---|---|

This grievance has been:

☐ Rejected (See attached letter for instruction):   Date: _____   Date: _____

☐ Withdrawn (see section E)   ☑ Accepted

☐ Amendment   Date: _____

Interview Conducted?   ☐ Yes   ☑ No   Date of Interview: _____   Interview Location: _____

Interviewer Name and Title (print): _____   Signature: _____   Date: _____

| Disposition: See attached letter   ☐ Intervention          ☐ No Intervention |
|---|

*This decision exhausts your administrative remedies.*

**HQ Use Only:** Date closed and mailed/delivered to grievant:   **APR 2 5 2022**

| SECTION E: | Grievant requests to WITHDRAW health care grievance: I request that this health care grievance be withdrawn from further review. Reason: |
|---|---|

Grievant Signature: _____          Date Submitted: _____

| Staff Name and Title (Print): _____ | Signature: _____ | Date: _____ |
|---|---|---|

COMPLETED
HCCAB
APR 2 5 2022

## STAFF USE ONLY

Distribution: **Original** - Returned to grievant after completed; **Scanned Copy** - Health Care Appeals and Risk Tracking System 2.0 (Do not place in central file or health record)

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.*

Exhibit "H"

SVSP - Salinas Valley State Prison

| | |
|---|---|
| Patient: | **AHDOM, BILAL** |
| DOB/Age/Birth Gender: | 10/31/1968  /  53 years  /  Male       CDCR: T28813 |

## Assessment Forms

Vocabulary:  SNOMED CT
; Comments:

2/6/2019 12:52 - Do-Williams, Dorothy CP&S
refused Xray L spine schedujled on 2/6/19

**Diagnoses(Active)**

| | |
|---|---|
| Asthma | Date:  12/7/2021 ; Diagnosis Type:  Discharge ; Confirmation:  Confirmed ; Clinical Dx:  Asthma ; Classification:  Medical ;  Clinical Service:  Non-Specified ; Code:  ICD-10-CM ;  Probability:  0 ; Diagnosis Code:  J45.909 |
| Back pain | Date:  10/11/2021 ; Diagnosis Type:  Discharge ; Confirmation:   Confirmed ; Clinical Dx:  Back pain ; Classification:  Nursing ;  Clinical Service:  Non-Specified ; Code:  ICD-10-CM ;  Probability:  0 ; Diagnosis Code:  M54.9 |
| Glaucoma | Date:  9/10/2021 ; Diagnosis Type:  Discharge ; Confirmation:  Confirmed ; Clinical Dx:  Glaucoma ; Classification:  Medical ;  Clinical Service:  Non-Specified ; Code:  ICD-10-CM ;  Probability:  0 ; Diagnosis Code:  H40.9 |
| Health care maintenance | Date:  3/30/2021 ; Diagnosis Type:  Discharge ; Confirmation:  Confirmed ; Clinical Dx:  Health care maintenance ;  Classification:  Medical ; Clinical Service:  Non-Specified ;  Code:  ICD-10-CM ; Probability:  0 ; Diagnosis Code:  Z00.00 |
| Hyperlipemia | Clinical Dx:  Hyperlipemia ; Code:  ICD-10-CM ; Probability:  0 ; Diagnosis Code:  E78.5 |
| Maceration of skin | Date:  3/17/2021 ; Diagnosis Type:  Discharge ; Confirmation:  Confirmed ; Clinical Dx:  Maceration of skin ; Classification:  Nursing ; Clinical Service:  Non-Specified ; Code:  ICD-10-CM ;  Probability:  0 ; Diagnosis Code:  L98.8 |
| Side effect of medication | Date:  12/14/2021 ; Diagnosis Type:  Discharge ; Confirmation:   Confirmed ; Clinical Dx:  Side effect of medication ;  Classification:  Nursing ; Clinical Service:  Non-Specified ;  Code:  ICD-10-CM ; Probability:  0 ; Diagnosis Code:  T88.7XXA |
| Urinary incontinence | Date:  12/7/2021 ; Diagnosis Type:  Discharge ; Confirmation:  Confirmed ; Clinical Dx:  Urinary incontinence ; Classification:  Medical ; Clinical Service:  Non-Specified ; Code:  ICD-10-CM ;  Probability:  0 ; Diagnosis Code:  R32 |
| Vitreous floater | Date:  9/10/2021 ; Diagnosis Type:  Discharge ; Confirmation:  Confirmed ; Clinical Dx:  Vitreous floater ; Classification:  Medical ; Clinical Service:  Non-Specified ; Code:  ICD-10-CM ;  Probability:  0 ; Diagnosis Code:  H43.399 |

Legend: c=Corrected, @=Abnormal, C=Critical, L=Low, H=High, f=Result Comment, i=Interp Data, *=Performing Lab

Report Request ID:  53076043                              Print Date/Time:   3/18/2022 14:26 PDT

**WARNING:** This report contains confidential, proprietary, and/or legally privileged
information intended for the recipient only.

78.

Exhibit

"I"

# ADA/Effective Communication Patient Summary

**As of:** 09/23/2021 08:30

## Patient Information

**NAME:** AHDOM, BILAL
**CDCR:** T28813

## Disability Placement Program

**Current DPP Code(s):**
 * DPW

**DPP Verification/Accommodation Date:** 05/18/21 9:15:46 PDT

**Current Housing Restrictions/Accomodations:**
 * No Rooftop Work/Hazardous Restriction
 * Lifting Restriction
 * Extra Time for Meals
 * Special Cuffing
 * Transport Vehicle With Lift
 * Limited Wheelchair User
 * Full time Wheelchair User
 * Inmate Attendant/ Assistant
 * Bottom Bunk
 * Ground Floor- No Stairs
 * Barrier Free Wheelchair Acces

## Methods of Communication

**SLI:**

**Primary Method:**

**Secondary Method:**

**Interview Date:**

## Developmental Disability Program

**Current DDP Code:**

**Effective Date:**

**Adaptive Support Needs:**

## Testing of Adult Basic Education (TABE)

**TABE Score:** 12.9

**TABE Date:** 09/24/2004 00:00

## Learning Disabilities

**Learning Disabilities:**

## English Proficiency

**LEP:** No

**Primary Language:** English

## Durable Medical Equipment

**Current ISSUED DME:**
 * Commode Chair Permanent
 * Eyeglass Frames Permanent
 * Incontinence Supplies Permanent
 * Mobility Impaired Disability Vest Permanent
 * Pressure Reducing Mattresses Permanent
 * Wheelchair Permanent
 * Other Permanent:wedge/pillow

## MHSDS

**MHLOC:**  GP

RECEIVED
HCCAB
DEC 1 5 2021

b5.

Exhibit

"J"

# REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 9/29/2021      **Date IAC Received 1824:** 9/27/2021      **1824 Log Number:** SVSP-L-21-781

**Inmate's Name:** AHDOM      **CDCR #:** T28813      **Housing:** D7-122

**RAP Staff Present:** ADA Coordinator  R. Mojica , Doctor  L. Gamboa, Health Care Grievance Representative  E. Delgado, Custody Appeals Representative  C. Martella   Health Care Compliance Analyst T. Mendez

**Summary of Inmates 1824 Request:** Inmate DPP code is DPW. His DDP code is NCF and has a TABE reading score of 12.9

Ahdom states they can't control their urine and at times find stool in their diapers.

Ahdom requests their weekly supply of diapers and access weekly or when needed to laundry to exchange soiled linen.

---

**Interim Accommodation:**

☒ No interim accommodation required: No emergency access issues presented

☐ Interim Accommodation provided (List accommodation and date provided):

☐ RAP rescinding interim accommodation:

---

**FINAL RESPONSE**

**RAP is able to render a final decision on the following:**

Your request for your weekly supply of diapers and access when needed to laundry to exchange soiled linen is approved with modifications.

**Response:**

Ahdom, based on the information collected as a result of your CDCR 1824, including medical records and consultation with appropriate experts, the Reasonable Accommodation Panel (RAP) staff determined that you were seen on 10/1/21 by your Primary Care Provider (PCP) there was no indication found for incontinence supplies. However, if you have an incontinence episode notify your housing unit officer. They will provide you a shower as soon as safety and security permits. Staff reviewed your requests and noted that staff will provide you with an incontinence shower as needed and ensure any soiled clothing is processed according to biohazard and/or infections linen bag procedures as necessary. In the event the accident occurs during first watch or a modified program, the program sergeant will be notified prior to releasing any inmate for a shower that has an incontinence accident. You will be accommodated with a shower as soon as possible, determined by the housing unit officer as safety and security concerns permit. After notification has been made, the housing unit officer will document the event in the incontinence shower log. Some inmates, due to an incontinence accident, may require additional linen and/or clothing supplies. Housing unit officer shall report any problems with obtaining extra linen or clothing to their immediate supervisor. Additional in-lines and/or showers may also be required for some inmates due to medical necessity or hygienic need. Housing unit officers shall afford extra in-lines and/or shower for inmates, in the event they require showering or clothing changes due to incontinence issues. If you have an accident, notify staff immediately. Custody staff will act discretely and in accordance with the local operational procedures. In the event that you have an incontinence episode, notify the housing unit officers. In the event of an accident occurring during first watch or a modified program, the program sergeant will be notified prior to releasing any inmate for a shower that has an incontinence accident. You will be accommodated with a shower as soon as possible, determined by the housing unit officer as safety and security concerns permit. After notification has been made, the housing unit officer will document the event in the incontinence shower log. Some inmates, due to an incontinence accident, may require additional linen and/or clothing supplies.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 to a (blue) 602HC as supporting documents.

---

| R. Mojica | | |
|---|---|---|
| **ADA Coordinator/Designee** | **Signature** | **Date sent to inmate:** DELIVERED OCT 1 4 2021 |

RAP Response - rev 08-17-17.docx

Exhibit "K"

| DATE | CDC# | NAME | ADDRESSEE |
|---|---|---|---|
| 11/12/21 | T28813 | ADOM | WARDEN SVSP |
| 11/30/21 | T28813 | AHDOM | HC APPLS ELK GROVE CA 95758 |
| 12/13/21 | T28813 | ADOM | HC APPLS ELK GROVE CA 95758 |
| 1/3/22 | T28813 | AHDOM | CHIEF I/M APPLS DOCR SAC CA 94283  ( 2 ENV ) |
| 1/24/22 | T28813 | AHDOM | VETERANS LAW GROUP POWAY CA 92064 |
| 2/1/22 | T28813 | AHDOM | PLO DONALD SPECTER SAN QUENTIN, CA 94964-0001 |
| 2/14/22 | T28813 | ADOM | BARTELL HANSEL GRESSLEY RIVERSIDE CA 92507 |
| 2/24/22 | T28813 | ADOM | GOV CLAIMS PROG W SAC CA 93960 |
| 3/16/22 | T28813 | AHDOM | CDCR APPEALS SACRAMENTO, CA 95811 |
| 3/29/22 | T28813 | ADOM | S KLARICH AAL TUSTIN CA 93960 |
| 11/28/22 | T28813 | AHDOM | US NORTHERN DIST CRT SF CA 94102 |
| 4/28/23 | T28813 | AHDOM | USDC NORTHERN DIST OAKLAND CA 94612 |
| 5/24/23 | T28813 | ADOM | AAL BEN RUDIN SD CA 92130 |
| 7/24/23 | T28813 | ADOM | OOA SAC CA 95811 |
| 8/3/23 | T28813 | ADOM | DOJ ATT GEN SD CA 92186 |
| 8/3/23 | T28813 | ADOM | USDC NORTHERN DIST OAKLAND CA 94612 |
| 8/3/23 | T28813 | ADOM | ZENERE COWDEN & STODDARD SANTA CLARA CA 95050 |
| 10/24/23 | T28813 | AHDOM | USDC NORTHERN DIST, OAKLAND CA 94612 |
| 10/24/23 | T28813 | AHDOM | DOJ, SAN DIEGO CA 92186 |
| 10/25/23 | T28813 | AHDOM | HCC & APP BRANCH ELK GROVE CA 95758 |

Exhibit "L"

 **HEALTH CARE SERVICES**                    Salinas Valley State Prison

| | | | |
|---|---|---|---|
| Name: | BILAL AHDOM | Patient ID: | 11917558 |
| DOB: | 10/31/1968 | Secondary ID: | T28813 |
| Exam Name: | US KIDNEY (RENAL) BILAT \| 76770 | Exam Date: | 5/23/2023 10:52 AM |
| Age: | 54Y 11M | | |

Primary Care Provider: Do-Williams, D., MD
Ordering Provider:    Saravi, M., MD

CLINICAL INDICATION: Urinary incontinence.
COMPARISON: None
Exam: Renal ultrasound.

FINDINGS:

Transverse and longitudinal images of the kidneys were obtained.

Kidneys: The right kidney measures 8.5 cm and is diffusely echogenic in appearance. The left kidney is not visualized.

Urinary bladder: Post void residual bladder volume is abnormally increased at 60 cc.

Vascular: The visualized portions of the aorta, inferior vena cava, and common iliac arteries are unremarkable.

IMPRESSION:

Echogenic right kidney.

Urinary retention.

Electronically Signed by: RWaters, MD

Date Signed: 5/23/2023 2:34 PM

**Report Electronically Signed by:**  WATERS, MD, RICHARD
**Report Electronically Signed on:**  5/23/2023 02:34 PM

Exhibit

"m"

State of California      **INMATE REQUEST FOR INTERVIEW**      Department of Corrections

GA-22 (9/92)

| DATE 11-27-23 | TO Mail Room Sergeant | FROM (LAST NAME) Adam | CDC NUMBER T28813 |

| HOUSING D2 | BED NUMBER 111 | WORK ASSIGNMENT Ed. | ASSIGNMENT HOURS FROM 0830 TO 1030 |

Clearly state your reason for requesting this interview.
You will be called in for interview in the near future if the matter cannot be handled by correspondence

Can you please send me a record of a "regular out-going mail" letter sent to S.V.S.P.
CMO, S. Sawyer in November 2021?... and if this is not the proper way to obtain this
information, please advise.

Thx In Advance.

Do NOT write below this line. If more space is required write on the back.

| INTERVIEWED BY Gonzalez | DATE 11/28 |

DISPOSITION Hello! & we don't keep record of "Regular Incoming/outgoing"
mail. We ONLY log Legal & Certified mail. Thanks!
-Mail Room

Exhibit "N"



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



### Headquarters' Level Response

**Closing Date:**   MAR 0 9 2022

**To:**          AHDOM, BILAL (T28813)
                 Salinas Valley State Prison
                 P. O. Box 1020
                 Soledad, CA 93960-1020

**From:**        California Correctional Health Care Services
                 Health Care Correspondence and Appeals Branch
                 P.O. Box 588500
                 Elk Grove, CA 95758

**Tracking #:**   SVSP HC 21001617

## RULES AND REGULATIONS
The rules governing these issues are:  California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

## HEALTH CARE GRIEVANCE APPEAL SUMMARY
In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

| Issue | Description |
|---|---|
| Issue: Grievances ( Grievance Status ) | Expedited processing. |
| Issue: Disagreement with Treatment (PCP) | Concern incontinence supplies were inappropriately discontinued without reason or notice. |
| Issue: Supplies (Diapers) | To have incontinence supplies restored. |
| Issue: Scheduling (PCP Encounter) | Incontinence concerns. |
| Issue: Staff Complaints (Deliberate Indifference) | Allegation of being unfairly targeted out of retaliation for previously reporting a rude provider. |

## HEADQUARTERS' LEVEL DISPOSITION

[X] No intervention.     [ ] Intervention.

## BASIS FOR HEADQUARTERS' LEVEL DISPOSITION
Health care staff, utilizing clinical expertise within the scope of their licensure, is responsible for determining if a health care grievance warrants expedited processing, not the grievant. Your health care grievance was identified by licensed clinical staff to not meet the criteria for expedited processing per California Code of Regulations, Title 15, Section 3999.228(b)(2) and/or 3999.230(b)(1)(B).

---

Note 1:  The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2:  The closing date reflects the closed, mailed/delivered date of the health care grievance.

**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA  95758

Case 4:22-cv-07150-JSW   Document 43-1   Filed 02/06/24   Page 26 of 67
Case 4:22-cv-07150-JSW   Document 37-7   Filed 09/27/23   Page 63 of 67 BM, T28813
SVSP HC 21001617
Page 2 of 3

Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed.

You have received primary care provider evaluation and monitoring for your complaint of urinary incontinence. As referenced in the Institutional Level Response, you were informed by the primary care provider on October 1, 2021, that orders for incontinence supplies were discontinued upon your housing change [*which occurred on August 16, 2021*], as there was no corroborating data, information, or diagnosis found in your health record to indicate such supplies were medically necessary. The primary care provider completed assessments, noted review of your history, current symptoms, and laboratory/imaging results, and developed a plan of care, including trial of oxybutynin for overactive bladder and urinary incontinence.

On December 29, 2021, the primary care provider noted trial of oxybutynin was discontinued due to your report of side effects. Your continued complaint of urinary incontinence was noted, which you reported only occurs at night. You denied any fecal incontinence or bowel-related concerns. The primary care provider noted concern for neurogenic bladder was not likely on account that your symptoms only occur at night; and, a prostate examination was performed, noting possible benign prostatic hypertrophy. A plan of care was noted to include a urinalysis, trial of Flomax (tamsulosin), and temporary orders for incontinence supplies, which would be re-evaluated in six months.

You were recently seen by the primary care provider on March 7, 2022, at which time you reported side effects and no symptom improvement with tamsulosin; therefore, the medication was discontinued. You were advised recent prostate-specific antigen (PSA) study was within normal limits, and no further changes to your plan of care related to urinary incontinence was noted.

You continue to have a temporary active order for distribution of urinary incontinence supplies. Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider. If you have additional health care needs, you may access health care services by utilizing the approved processes in accordance with California Correctional Health Care Services policy.

You alleged retaliatory care; however, your allegation is refuted by professional health care staff familiar with your health care history, as well as a review of your health record. There is no indication your care has not been provided pursuant to the rules and regulations governing the management and delivery of medically or clinically necessary health care services. Patients shall be accorded impartial (equal, unbiased) access to treatment or accommodations that are determined to be medically or clinically indicated, based on the patient's individual presentation, history, and exam findings, in accordance with appropriate policies and procedures.

Durable Medical Equipment and medical supplies shall be distributed by health care staff based on medical necessity as defined in the Durable Medical Equipment and Medical Supply Formulary. The formulary was developed based on Medicare and Medicaid standards, and the policy is intended to promote consistency in the way these items are provided. All associated supplies and accessories listed in the Durable Medical Equipment and Medical Supply Formulary shall be provided to patients currently issued the Durable Medical Equipment (without an additional order) unless the establishment of additional medical necessity is required as described in the Health Care Department Operations Manual, Section 3.6.1, Durable Medical Equipment and Medical Supply.

A review of the Health Care Appeals and Risk Tracking System reveals you regularly utilize the health care grievance process for your health care concerns. Records indicate that several of your health care grievances include multiple issues, many of which are duplicative of other health care grievances submitted, which makes it complicated for staff to ensure that your explicit concerns are being addressed. You are encouraged to work with your clinicians and the Health Care Grievance Office, by making efforts to provide information that is not

Note 1:  The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2:  The closing date reflects the closed, mailed/delivered date of the health care grievance.

duplicative and does not involve multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response. Per California Code of Regulations, Title 15, Section 3999.227(e), a grievance is limited to one issue or set of issues related to a single health care discipline that can reasonably be addressed in a single health care grievance response and may be subject to rejection per California Code of Regulations, Title 15, Section 3999.234(a)(1). Health care grievances that duplicate the grievant's previous health care grievance upon which a decision was rendered or is pending and the grievant has not provided any new information that would indicate additional review is warranted may be subject to rejection per California Code of Regulations, Title 15, Section 3999.234(a)(6).

Monetary compensation is outside the jurisdiction of the health care grievance process.

While the health care grievance process is a means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

This decision exhausts your administrative remedies.

Digitally signed by HCCAB
Date: 2022.03.08 15:05:54
-08'00'

S. Gates, Chief
Health Care Correspondence and Appeals Branch
Policy and Risk Management Services
California Correctional Health Care Services

March 8, 2022

Reviewed and Signed Date

Note 1: The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.

**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA 95758

1. Bilal Adem, # T38813
2. S.V.S.P.
3. P.o. Box 1050-D2-111
4. Soledad, CA 93960
5.
6.
7.
8.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

9.
10. Bilal Adem,                              Case No.: 4:22-cv-07150-JSW
11.        Plaintiff,
12.    v.                                    Affidavit of Bilal Adem
13. CDCR, et al.,                            In Support of Plaintiffs
14.        Defendants.                       Opposition To Motion for Summary Judgment.
15.
16.    I, Bilal Adem, swear:
17.
18.        1.) I am over the age of 18 and the Plaintiff to the within cause:
19.
20.        2.) I am currently incarcerated at Salinas Valley State Prison at Soledad, California;
21.
22.        3.) That on March 1st 2023,  the Court found that I stated an 8th Amendment claim against Monte Grande,
23. Latersetain, Ritchley, Sawyer and Mejica, and that CDCR violated the ADA;
24.
25.        4.) that I disputed Defendants' statement of issues by opposing there question in the MSJ, p.2, lns.13-17 with an opp-
26. osing question that should the Court deny the Defendants' request to dismiss Plaintiffs claims against the Defendants;
27.
28.                                                      1.

5.) that I demonstrated that I experienced mental, emotional and physical pain and suffering throughout the period of time I was denied needed incontinence supplies and disputed the Defendants' claims and question in the MSJ, pg. 2, lines 18-23 with an opposing question are the Defendants Mojica, Sawyer, Leterszton, Monk-Grande, and Atchley entitled to summary judgment denied on Plaintiff's 8th Amendment claims for deliberate indifference based on Plaintiff's demonstrations;

6.) that I alleged that I was excluded from the prison's Durable Medical Equipment services and disputed the Defendants' claim and question in the MSJ, pg. 2, lines 24-28, pg. 3, lines 1-2 with an opposing question is CDCR entitled to summary judgment denied on Plaintiff's claim that it violated the ADA;

7.) that I presented that all the Defendants violated clearly established constitutional rights, and disputed Defendants' claim that Atchley, Sawyer and Mojica are entitled to qualified immunity because their actions constitute deliberate indifference, and I opposed their claim with a question; are Defendants Atchley, Sawyer, and Mojica excluded from those who are entitled to qualified immunity as Defendants claim they are in the MSJ, pg. 3, lines 3-6;

8.) that I was not prevented from receiving urinary incontinence supplies on Alpha Yard due to having them discontinued by a PCP on or prior to August 16, 2021, which Defendants claim in the MSJ, p. 3, lines 15-17. Also, I did not state in the complaint that my incontinence supplies were discontinued on August 16, 2021, nor were my incontinence supplies discontinued in August; and that Dr. Monte-Grande issued my weekly regiment of incontinence supplies on August 31, 2021, and on September 1, 2021.

9.) that I did not state in the complaint that I received my last weekly incontinence supplies on August 20, 2021; that I did state I received a weekly regiment of incontinence supplies between August 27th and September 3rd 2021 in the complaint;

10.) that I was not examined, evaluated, interviewed or questioned by a PCP for, or regarding, urinary incontinence supplies or urinary incontinence conditions; that between August 16 and December 6, 2021, I was only examined by one PCP (Dr. Monte-Grande) on September 10, 2021 for non urinary incontinence issues, and that I was not examined for urinary incontinence by a Registered Nurse (R.N.) or any other medical staff, on October 1, 2021;

2.

11.) that I did not attend an off-site opthalmology appointment with Dr. Rashid on September 10, 2021;

12.) that I was escorted into a small room containing a chair; blood pressure apparatus, a wall mounted keyboard, screen, and desktop on September 10, 2021 by CNA Rubio... I was then interviewed by Dr. MonteGrande regarding my off-site opthalmology visit. Dr. MonteGrandes first words were, "You are only being seen today for a follow-up from your opthalmology visit with Dr. Rashid". After my Achilles struck the foot rest of my wheelchair, Dr. MonteGrande told her assistant, CNA Rubio, "I should be doing this examination with him" on the bed in my office!" There was no bed or exam table in the room that Dr. MonteGrande performed the exam. I did not give verbal or written consent to an upper and lower body extended physical exam on September 10, 2021. I did not refuse to get on a bed, or on exam table on September 10, 2021; and Dr. MonteGrande instructed CNA Rubio to retrieve a reflex hammer from her office, she returned with the medical instrument and Dr. MonteGrande used the instrument during the exam;

13.) that on September 10, 2021, Dr. MonteGrande initially informed me that she was only seeing me for a follow-up from my opthalmology visit with Dr. Rashid. Towards the end of her questioning, MonteGrande asked if I had any questions, and before I could respond, she began berating me with questions, my wheelchair use, and stroke history. And without announcing her intentions, she instructed me to raise my left leg and extend it while I was seated in my wheelchair. With both of her palms she struck downward on my shin and demanded I resist. She then began to push downward as aggressively still demanding I resist. She then aggressively struck downward on my shin with such pain wrenching force, my leg collapsed resulting in stabbing spinal pain, and my Achilles hitting the foot rest on my wheelchair causing abrasions and pain. MonteGrande then instructed me to place my right forearm on the arm rest of my wheelchair. She aggressively placed my right hand on my right shoulder and instructed me to push forward against her aggressive pressing. She then very aggressively placed my forearm on the arm rest, took hold of my lower hand and upper part of my wrist, and "flung" them both towards my right shoulder, hitting it, and resulting in my forearm and elbow hitting the arm rest, and my fingers hitting and landing between the sharp rusted crevice in the brake handle causing intense pain and abrasions; and after the spinal pain subsided from being struck on the shin of his extended leg, I realized I had urinated in my trousers and wheelchair seat;

3.

1. 14.) that on September 10, 2021, Dr. MonteGrande performed an unconsented upper and lower body extended physical
2. exam that included using a medical instrument. The exam caused audible whincing pain to my chronic
3. spinal condition and extremities, and resulted in me urinating in my trousers and wheelchair seat; and
4. requesting incontinence supplies (diapers) from Dr. MonteGrande. At 1303 PDT on September 10, 2021, Dr.
5. MonteGrande deliberately OMITTED the fact the exam was performed, the facts; my body's reaction to
6. strength test and medical instrument; my progression and/or regressive chronic conditions based on the exam,
7. and the test results and findings, from my health records history;
8.
9. 15.) that on September 10, 2021, Dr. MonteGrande, at 1303 PDT, deliberately made ADMISSIONS of opthalmology follow-up
10. visit statements, comments and opthalmologist recommendations into my health records history;
11.
12. 16.) that on September 10, 2021, Dr. MonteGrande did not examine, evaluate or question me for urinary incontinence issues;
13. Dr. MonteGrande did not prescribe Oxybutinin for bladder or urinary incontinence supplies;
14.
15. 17.) that I arrived on Delta Yard on August 16, 2021. My first PCP visit was with Dr. MonteGrande on September 10
16. 2021. That between August 20 and September 1, 2021, I was issued my regular weekly PCP OMC ordered
17. incontinence supplies on 08/20 and on 09/01 while housed on Delta Yard;
18.
19. 18.) that on September 10, 2021, I requested incontinence supplies from Dr. MonteGrande. On September 13, 2021, I filed
20. an assault complaint against Dr. MonteGrande. On September 15, 2021 Dr. MonteGrande discontinued my incontinence supplies;
21.
22. 19.) that on September 18, 2021, I filed a Reasonable Accommodation Request form 1824 a weekly regiment of incon-
23. tinence supplies and access to laundry to exchange urine soiled linens; and if the weekly supply of incontinence supplies
24. are not provided, I am requesting Reasonable Accommodations of a weekly supply of towels, plastic (trash can liners),
25. tape, and sanitary provisions; the RAP officials denied my request for incontinence supplies, and my Reasonable
26. Accommodations request for a weekly supply of towels, plastic, tape, and sanitary provisions on September 29, 2021;
27. The RAP approved a shower after each episode of urinary incontinence only if the safety and security of the institution allowed;
28.

4.

1. that on November 19, 2021, Third Watch Sergeant called me to Delta Yard Program office and informed me that he
2. was interviewing me regarding my letter to the Warden regarding my request for intervention; I requested
3. incontinence protections and the 3rd Watch Sergeant provided ineffective 3 boxer shirts and 3 towels in
4. response to my request for intervention; that the Sergeant was a witness to Atchley's directive, and recipient of it, to
5. forward my letter to him, and the Sergeant responded to my request for intervention;
6.
7.
8. 20.) that on December 29, 2021, Dr. Latersztain instructed me to lay across the edge of an exam bed, and she performed
9. a 4-5 second painful rectal/prostate exam without my verbal or written consent; Latersztain prescribed Flomax
10. for the prostate issue; that Latersztain prescribed temporary incontinence supplies; I did not receive the temporary
11. incontinence supplies until January 29th 2022, more than 3 weeks after Latersztain informed me she would
12. provide them for my incontinence symptoms complained about prior to and on 12/29/21; and Latersztain confirmed the recent
13. prostate blood test revealed negative results;
14. 21.) that on November 12, 2021, I sent a regular outgoing letter to the CMO of Salinas Valley State Prison, Medical
15. Department, and a legal outgoing letter to the Warden of Salinas Valley State Prison requesting urinary incontin-
16. nence supply denial intervention from both;
17.
18. 22.) that in SVSP-HC-21111878, SVSP-HC-21111817, and SVSP-HC-21011786 I claimed that I was being improperly
19. denied access to incontinence supplies, and other claims of [Eights]violations; that the claim of improperly denying
20. incontinence supplies was administratively exhausted at the headquarters level; that Mojica and Sawyer named
21. themselves in final Reasonable Accommodations request (1824 form) decision, and institutional level
22. decision, as well signing off on their decisions through written signature; and the EII claims that
23. none of the Defendants i.e., MonteGrande, Latersztain, Atchley, Sawyer or Mojica in none of the grievances, were
24. "expressly named;" that all of the Defendants participated directly, or in their supervising role, in improperly
25. denying needed incontinence supplies;
26. 23.) that on March 8, 2022, headquarter level officials linked Dr. Latersztain to grievance SVSP-HC-21011817
27. by the specific nature of the grievance and the date;
28.

5.

34.) that on May 23, 2023, Dr. R. Waters opined, via medical report, that I had a confirmed active diagnosis of urinary
incontinence prior to Plaintiffs June 2023 deposition, and prior to the Defendants signing and submitting their
declarations;

35.) that on September 18, 2021, I notified Mojica, through the filing of an 1824 form (Reasonable Accommodations request)
that my U.H.R. (Universal Health Record) contained objective evidence of my urinary incontinence supply needs and
history;

36.) that from August 14, 2021 to present day, proof of my diagnosis of urinary incontinence, and current, and
recent history of PCP ordered urinary incontinence supplies were in my health records, and made available
and accessible to the Defendants;

37.) that between September 8, 2021 and January 19, 2022, I was unable to painlessly, effectively and humanely protect
myself from involuntary urinations;

38.) that Appealed Sawyer's institutional level denial to the headquarter's level on November 28, 2021; that I
appealed Mojica's 1824 Reasonable Accommodations decision on October 24, 2021;

I, Bilal Adam, do swear under penalty of perjury under the Laws of the State of California, that I have read the contents contained in this Opposition To Defendants Motion For Summary Judgment, and know that the foregoing statements are true and correct, and are of my own personal knowledge. And if called upon as a witness to testify to the contents of this Affidavit In Support of the Opposition To Defendants' Motion For Summary Judgment, I would swear under oath that the same is true and correct, and of my own knowledge.

I swear under oath that the foregoing is true and correct and is of my own personal knowledge.

Executed on this 28th, day of January 2024 at Soledad, California.

Bilal Adam In Pro Se
And The Affiant

1  Bilal Adom, #T38813
2  S.V.S.P.
3  P.O. Box 1050-D2-111
4  Soledad, CA 93960
5.
6           IN THE UNITED STATES DISTRICT COURT
7           FOR THE NORTHERN DISTRICT OF CALIFORNIA
8           SAN FRANCISCO DIVISION
9.
10. Bilal Adom,                      Case No: 4:22-CV-07150-JSW
11.      Plaintiff,
12.   v.                            Motion For Appointment OF Counsel
13. CDCR, et al.,                   Pursuant To 28 U.S.C. § 1915 (e)(1)
14.      Defendants./               With Attached Affidavit and Exhibits.
15.
16      COMES NOW Plaintiff, Bilal Adom, (hereinafter, "Plaintiff"), a state prisoner, proceeding in the above
17  entitled action in propria persona and in forma pauperis with a 42 U.S.C § 1983 Civil Rights Action
18  against Defendants, and each of them, for the expressed violation of Plaintiff's Eighth Amendment
19  Rights to be free of cruel and unusual punishment, to include a violation of the ADA, and deli-
20  berate indifference to serious medical needs by prison officials, as well as, medical officials as pre-
21  scribed by the United States Constitution as announced by the United States Supreme Court in
22  Estelle v. Gamble (1976) 429 U.S. 97, 104, to motion this Honorable Court for the appointment of
23  counsel pursuant to 28 U.S.C. § 1915(e)(1).
24.

25. <u>MOTION FOR APPOINTMENT OF COUNSEL AND CAUSE:</u>
26.
27.      Plaintiff's request for extension of time to file an opposition to the motion for summa-
28.                                    1.

1. ary judgment was granted on December 18, 2023. The opposition was due on or before January 29, 2024.

2. 1) Plaintiff contends that false declatory statements were knowingly presented as material

3. fact in support of the motion for summary judgment. (See attached Affidavit, para, 3

4.

5. 2) Plaintiff contends that Defendant Dr. Scott Ladd failed to provide Plaintiff a copy of his personal

6. declaration that evidence indicates exists. (Attchd, Affdvt., para, 4

7.

8. 3) Plaintiff contends that the Defendants presented two sole witnesses, to the events involving two

9. Defendants, who are also potentially integral to the Plaintiffs claims, and in disputing the material

10. facts presented in the motion for summary judgment, or potential trial. (Attchd, Affdvt, para; 5

11.

12. 4) Plaintiff contends that the Defendants have put him on notice of the false declatory statements,

13. of an existing declaration, of a defendant, that was not provided; and two eyewitnesses integral

14. to Plaintiffs claims, and two Defendants' defenses; (Attchd, Affdvt, para, 5

15.

16. 5) Plaintiff believes that he should be allowed the Courts permission, or an opportunity to respond to

17. the evidence, the absence of critical evidence, and an opportunity to obtain sworn statements from the two

18. sole witnesses (eye witnesses) to the two events in question. Plaintiff is a layman, and indigent.

19. 6) Plaintiff contends that he does not have the resources or ability to investigate or obtain the

20. necessary evidence and declarations/depositions to support the contentions herein, absent the help

21. of this Court; (Attchd; Exhib, "Affdvt; para, 6

22. 7) Plaintiff contends that he believes that he meets the requirements for the appointment of

23. counsel, as he is not capable of researching, preparing the necessary and required papers, nor

24. comprehending the complex and comprehensive legal issues now before this Honorable Court.

25. This said, Plaintiff notifies this Honorable Court that he suffers from several chronic conditions

26. from which he takes a number of prescribed medications, steroids, and pain managements. Plaintiff

27. is also a stroke survivor. Plaintiff also notifies this Court that he continues to suffer ADA

28.

2.

1. violations through an abrupt cancellation/discontinuance of a permanent PCP order DME (durable

2. medical equipment). (Attachd, Pltfdvt, paras 7, 8, 9, 10, 11    ) Plaintiff feared that he would be in err by raising this

3. issue in the opposition, or at this stage of the proceedings. Plaintiff further contends that in addition

4. to this on-going behavior by the defendants, he believes that an attorney is also needed to address

5. the legal arguments presented by the Defendants' counsel if this Court grants the requested

6. Albino hearing;

7.

8. 8.) Plaintiff contends that the continued ADA violations, for a great period of time, and throughout the

9. course of this litigation, have made it even more complicated and burdensome to litigate this cause

10. of action without the assistance of someone trained in the law. Furthermore, Plaintiff's medical

11. conditions, circumstances and pain management further prevents him from knowing how, and applying

12. the law and its procedures, as they should be applied in prosecuting such an action, which the instant

13. cause of action may require a trial, discovery of documents and testimony of eyewitnesses; expert

14. testimony to rebut the testimony of the physicians/defendants here being sued in their individual and

15. official capacities; and the preparation of documents and pleadings to oppose any claims the defendants,

16. and each of them, believe they might raise in the defense of the instant action. Plaintiff contends

17. that Defendants have different attorneys (two attorneys) representing them individually and

18. in clusters, but two (2) seperate firms nonetheless, which makes it impossible for Plaintiff, in the

19. layman state (mental and physical condition he currently endures secondary to his many, many

20. medical problems and physical disabilities to prosecute this legal and federal civil action. (Attachd, Pltfdvt, para, 7

21.

22. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO APPOINT

23. COUNSEL.

24.

25.        Indigent prisoners seeking relief under § 1983 may petition a federal court to appoint

26. counsel to appoint counsel to represent them. 28 U.S.C. § 1915(e)(1).

27.

28.                                         3.

1.     There has been several instances where the various Circuit Courts found appropriate the appoint-

2. ment of counsel to represent a prisoner in a § 1983 claim such as:

3.      McCarthy v. Weinberg, 753 F.2d 837, 838-39 (per curiam) (appointment of counsel appropriate

4. because pro se prisoner suffering from severe physical handicaps presented colorable claims that

5. doctor failed to provide physical therapy and medication to treat prisoners multiple sclerosis.);

6. also e.g. Alston v. Parker, 363 F.3d 229, 231 (3rd Cir. 2004); Castillo v. Cook County Mail Room

7. Dep't, 990 F.2d 304, 307 (7th Cir. 1993); Montgomery v. Pinchak, 294 F.3d 492, 499, 501-05 (3rd Cir. 2002);

8. Santiago v. Wells, 599 F.3d 749, 762-64 (7th Cir. 2010); Williams v. Carter, 10 F.3d 563, 567 (8th

9. Cir. 1993); and, Agyeman v. Corr. Corp. of Amer., 390 F.3d 1101, 1104 (9th Cir. 2004) (Court improperly

10. denied appointment of counsel because complexity of case created exceptional circumstances).

11.

12.                 -CONCLUSION-

13.

14.     With the above information in mind, and the documents attached herein, to verify what Plaintiff informed

15. the court of in his Motion For Appointment of Counsel filed January 28, 2024, which Plaintiff has attached

16. along with his Motion on Affidavit requesting appointment of counsel due to his inability to properly

17. apply laws, and their procedures, as they should be applied in prosecuting such an action, and Plain-

18. tiffs inability to do so, appoint counsel to Plaintiff in the interest of justice to aide Plaintiff, the Court, and

19. Defendants, and each of them, to adjudicate the instant cause of action on the merits, and grant such

20. further relief as is just and appropriate as a matter of law. (Plaintiff request Administrative notice be given for the

21. Reasonable Accommodations Request (1824) ;  Dr. A. Waters medical report, dated 05/23/23, and health care grievances (also) attached as exhibits.

22. Dated: January 28th, 2024.            Respectfully Submitted,

23.

24.                                       Bilal Adam

25.                                       Plaintiff In Propria Persona

26.

27.

28.                         4.

1. Bilal Adam, # T28813
2. S.V.S.P.
3. P.o. Box 1050-D2-111
4. Soledad, CA 93960
5.
6.
7.
8.
9.

      IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF CALIFORNIA
      SAN FRANCISCO DIVISION

10. Bilal Adam,                          Case No: 4:22-cv-07150-JSW
11.          Plaintiff,
12.    v.                               Affidavit of Bilal Adam
13. CDCR, et al,                        In Support of Plaintiff's
14.          Defendants. /              Motion For Appointment of Counsel, With Exhibits.
15.
16.    I, Bilal Adam, swear:
17.
18.    1. That I am over the age of 18 and the Plaintiff to the within cause;
19.
20.    2. that I am currently incarcerated at Salinas Valley State Prison at Soledad, California;
21.
22.    3. that expert witness, Dr. Patrick Cello, and Defendant Monte Grande gave false testimonial
23. statements of material facts in their declarations; that Dr. Cello swore that Defendant Dr. Scott Ladd
24. authored a Declaration that he (Dr. Cello) relied on to conclude, in his expert opinion, that Dr. Ladd
25. complied with the standard of care; that Defendant Dr. Monte Grande falsely stated as material that she
26. did not discontinue Plaintiff's incontinence supplies; (See Attached, Exhibits, "G", pg 1, para 1, 6; "H", pg 1,
27. ~ 2, para 5
28.

                  1.

1. 4.) that Defendant Scott Lodd, M.D. did not provide a copy of his Declaration with his Motion For
2. Summary Judgment; (Attchd. Exh. "A")
3.

4. 5.) that the Defendants presented two eyewitnesses to 2 events involving two Defendants i.e., Defendants
5. Atchley and MonteGrande; that the 3rd watch Sergeant, on November 19, 2021, informed me that he was acting
6. pursuant to my request for intervention letter to the Warden (Atchley); that on September 10, 2021, eyewitness
7. Bianca Rubio was told, by Dr. MonteGrande, "I should be doing this examination with him" on the bed
8. in my office."; that Dr. MonteGrande instructed eyewitness Rubio to retrieve a medical instrument (reflex
9. hammer) from her office/exam room;

10.

11. 6.) that I am a layman, and I do not have the resources or the ability, intellectually or monetarily, to
12. investigate, or obtain the necessary evidence, or present the appropriate motions and arguments to rebut
13. any Defendants' motions, oppositions, or hearings that they've requested that may be granted by this
14. Court;

15.

16. 7.) that I suffer from numerous medical conditions, and physical limitations that compounds the difficulties
17. and my cognitive abilities to understand the law, to research, to comprehend the complex and comprehensive legal
18. issues; (Attchd. Exh. "B")

19.

20. 8.) that in August 2023, my DME (pressure reducing mattess) permanent order was discovered removed from
21. my list of CURRENT ISSUE DME ADA/Effective Communication Patient Summary; that custody
22. informed me that they could no longer provide me with a pressure reducing mattess i.e., SVSP's "Double Mattress";

23.

24. 9.) that I am unable to sleep on a non pressure reducing mattess for more than 20-45 minutes without
25. being awakened by excruciating spinal pain; that medical professionals have attempted to address the
26. pain issue via Diclofenac Sodium Gel, Lidocaine Pain Relief Patches, Acetominophen, and Naproxen, which
27. have provided minimal to zero effectiveness in abating the pain caused by sleeping or lying down on
28.

2.

1. a "single flat state issue mattress, spread out on a solid metal rack"; (Attchd, Exh," C "
2.

3. 10.) that on April 5, 2023, medical tests, x-rays, ordered by Dr. Sarovi, indicated that my chronic
4. spinal condition was worsening; that in and/or between August and December 2023, Dr. Sarovi
5. informed me that medical policy no longer allows PCP's to order or issue DMEs for pressure reducing
6. mattresses, and it was not important or necessary for me to know when the DME for the mattress,
7. was discontinued;
8.

9. 11.) that in September 2023, I filed a health care grievance, SVSP-HC-23001028-, complaining/appealing
10. the cancellation/discontinuance of the permanent DME for a pressure reducing mattress; that in
11. November of 2023, I filed a health care grievance, SVSP-HC-23001274, which may have also been filed appealing
12. the discontinued DME; (Attchd, Exh, " D ", " E ";
13.

14. 12.) that in January 2024, I filed a Reasonable Accommodations Form (1824) requesting a Chrono for a
15. "double mattress"; (Attchd, Exh," F "
16.

17. 13.) that healthcare grievances SVSP-HC-23001038 and SVSP-HC-23001274, and Reasonable Accommodations
18. Form Log # 501188 have not been administratively exhausted;
19.

20. 14.) that I had a CURRENT ISSUE DME order for a permanent pressure reducing mattress;
21. that in August of 2023 I was informed that my DME was discontinued, and that I was no
22. longer qualified or eligible to possess a pressure reducing mattress i.e., SVSP "Double Mattress";
23. that I am now unable to sleep more than 30-45 minutes on the single state issue mattress
24. without being awakened by excruciating chronic spinal pain; that the numerous pain meds,
25. provides little to zero effectiveness in abating the pain when lying down or sleeping;
26. (Attchd, Exh," I "
27.
28.

3.

1.
2.
3.
4.
5.
6.         I, Bilal Adam, do swear under the penalty of perjury under the Laws of the State of
7. California, that I have read the contents contained in this Affidavit In Support of The Motion
8. For Appointment of Counsel, and Know that the foregoing statements are true and correct, and are of
9. my own Knowledge. And if called upon as witness to testify to the contents of the Motion,
10. I would swear under oath that the same is true and correct, and of my own Knowledge.
11.
12.        I swear under oath that the foregoing is true and correct and is of my own personal
13. Knowledge.
14.
15. Executed on this 28th day of January 2024 at Soledad, California.
16.
17.
18.                                                              Bilal Adam In Prose
                                                                And The Affiant
19.
20.
21.                    V E R I F I C A T I O N
22.
23.        I swear under the penalty of perjury that the foregoing is true and correct and is
24. of my own personal Knowledge.
25.
26. Dated: January 28th, 2024.                          Respectfully Submitted
27.
28.                                    4.

Exhibit

"A"

<u>CERTIFICATE OF SERVICE</u>

     I am a citizen of the United States. My business address is 2005 De La Cruz, Suite 240, Santa Clara, CA 95050. I am employed in Santa Clara County where this service occurred. I am over the age of 18 years and not a party to the within cause.  I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing and facsimile. In the case of mailing [other than overnight delivery], the practice is that correspondence is deposited in the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

     On Wednesday, September 27, 2023, I served the following documents:

- DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
- MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- DECLARATION OF ADAM M. STODDARD, ESQ. IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- DECLARATION OF JOHN PATRICK CELLO, M.D. IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
- [PROPOSED] ORDER GRANTING DEFENDANT SCOTT LADD, M.D.'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| BILAL ADOM<br>CDCR# T28813<br>SALINAS VALLEY STATE PRISON<br>ATTN: LITIGATION DEPT.<br>31925 HIGHWAY 101<br>SOLEDAD CA 93960 | |

☒  (BY MAIL) I caused a true copy of each document identified above to be placed in a sealed envelope with first-class postage affixed. Each such envelope was deposited for collection and mailing that same day in the ordinary course of business in the United States mail at San Jose, California.

☐ (BY PERSONAL SERVICE) I caused a true copy of each document identified above to be delivered by hand to the offices of each addressee above.

☐ (BY OVERNIGHT DELIVERY) I caused a true copy of each document identified above to be sealed in an envelope to be delivered to an overnight carrier with delivery fees provided for, addressed of each addressee above.

☐ (BY-E-MAIL OR ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the persons at the e-mail address listed above.  I did not receive, within a reasonable

CERTIFICATE OF SERVICE - 1

1 time after the transmission, any electronic message or other indication that the transmission was
2 unsuccessful.

3 ☐ (BY ELECTRONIC SERVICE) I caused each of the above-named documents to be delivered
4 by email to the parties via One Legal E-Service upload link.

5 ☐ (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.
6
7 ☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

8 _____
9 Diane Point
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATE OF SERVICE - 2

Exhibit

"B"

Outpatient Progress Note

AHDOM, BILAL  - T28813

## History of Present Illness
53 y.o. male inmate here after a visit to ophthalmology, Dr. Karim Rasheed MD on 8/27/21.
His impressions were (1) Pseudophakia & Glaucoma, stable (2) Posterior capsule opacity, OU (3) Vitreous floaters, OU.
His recommendations (1) YAG laser capsulotomy discussed. Patient want to wait. Will consider at next visit (2) Continue Latanoprost drops unchanged. (3) F/U 3-4 months

He voiced concern that his Latanoprost was discontinued. But on query to the pharmacy, pharmacist stated that inmate had to request for it to be refilled. It does not get dispensed automatically. Inmate informed about this. It was then requested that it be delivered to him today

## Review of Systems
No other concerns voiced.

## Physical Exam

### Vitals & Measurements
**T:** 36.2  °C  (Oral)  **HR:** 70 (Peripheral)  **RR:** 16  **BP:** 104/67
**SpO2:** 98%

## Assessment/Plan
Glaucoma
   OU
   Continue Timolol as ordered
   Ordered:
latanoprost ophthalmic, 1 drop, Eye-Both, Soln-Opth, qPM-KOP, Administration Type KOP, Order Duration: 180 day, First Dose: 09/10/21 14:00:00 PDT, Stop Date: 03/09/22 13:59:00 PST
Health care maintenance
Vitreous floater
   F/U with ophthalmology

Orders:
   Follow Up Ophthalmology Referral

H/O Cataract removal, both eyes, pseudophakia OU
   F/U ophthalmology

CCP 3 months

## Problem List/Past Medical History
   Ongoing
      Asthma
      Back pain
      Cataract
      Chronic pain syndrome
      CVA (cerebral vascular accident) in 2011
      Hyperlipidemia
      Hypertension
      Posterior vitreous detachment
      Primary open angle glaucoma of both eyes
      Procedure refused
   Historical
      No qualifying data

## Procedure/Surgical History
hemilaminectomy 2008.

## Medications
 Active Medications:
acetaminophen  650 mg 2 tab Oral BID-KOP KOP PRN: pain
aspirin  81 mg 1 tab Oral Daily-KOP KOP
1-atorvastatin 80 mg Tab (Lipitor)  80 mg 1 tab Oral qPM-KOP KOP
ezetimibe 10 mg Tab (Zetia)  10 mg 1 tab Oral Daily-KOP KOP
hydroCHLOROthiazide  25 mg 1 tab Oral Daily-KOP KOP
ketotifen 0.025% Soln-Opth 5 mL (ketotifen 0.025% ophthalmic solution)  1 drop Both eyes BID-KOP KOP PRN: allergy symptoms
latanoprost 0.005% Soln-Opth 2.5 mL (latanoprost 0.005% ophthalmic solution)  1 drop Both eyes qPM-KOP KOP
levalbuterol 45 mcg/puff Aerosol 15 gm (XOPENEX HFA 45 MCG INHALER)  90 mcg 2 puff Oral q6hr-KOP90 KOP PRN: shortness of breath
1-metoprolol tartrate 50 mg Tab (metoprolol tartrate 50 mg)  50 mg 1 tab Oral BID-KOP KOP
mometasone 200 mcg/inh Aerosol 120 puffs (4334-01) (Asmanex HFA 200 mcg/inh inhalation aerosol)  200 mcg 1 puff Oral BID-KOP60 KOP
timolol 0.25% Soln-Opth 5 mL (Timoptic Ocudose 0.25% ophthalmic solution)  1 drop Right eye BID-KOP KOP

Result type:        Outpatient Progress Note
Result date:        September 10, 2021 12:50 PDT
Result status:      Auth (Verified)
Result title:       OTM Ophthalmology
Performed by:       Montegrande, Faye P&S on September 10, 2021 13:02 PDT
Verified by:        Montegrande, Faye P&S on September 10, 2021 13:02 PDT

Printed by: Martinez, Rosa HRT I
Printed on: 12/19/2023 9:51 PST

Page 1  of 2

Exhibit "C"



AHDOM, BILAL          T28813      KOP        D 002 1111001L    ADDRX.16809367 183
NAPROXEN 500 MG TABLET UD         #60.00      1 REFILL   ADMIN:01/25/2024DISP: 1/23/2024
                                  60687-0491-01                ORDER EXPD04/24/2024   T29326137

                                                       AHP  -  -

Take 1 tablet by mouth 2 times a          TAKE WITH FOOD.
day as needed for pain for 90 days
best taken with food Request Refills  Salinas Valley State Prison

                                      Dr:Phuc Lam
                                      Salinas Valley State Prison
                                      P.O. Box 1020Soledad, CA  93960-1020
                                                              (888) 698-164
                                                              PROD. EXP. 1/24

Exhibit "D"



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



**Institutional Level Assignment Notice**

*Mattress*

**Date:**   September 14, 2023

**To:**   AHDOM, BILAL (T28813)
#D 002 1111001LX
Salinas Valley State Prison
P. O. Box 1020
Soledad, CA 93960-1020

**Tracking #:**   SVSP HC 23001028

**Due Date:**   11/9/2023

The Health Care Grievance Office has accepted your health care grievance for response. If you need additional information regarding your health care grievance, contact the health care grievance coordinator at your institution.

California Code of Regulations, Title 15, Section 3999.226(c), states "The grievant has the right to submit one health care grievance every 14 calendar days, unless it is accepted as an expedited grievance. The 14 calendar day period shall commence on the calendar day following the grievant's last accepted health care grievance." Health care grievances submitted in excess of these limitations may be subject to rejection per California Code of Regulations, Title 15, Section 3999.234(a)(1).

If you have additional health care needs, you are advised to utilize approved processes to access health care services in accordance with California Correctional Health Care Services policy.

Health Care Grievance Office Representative
Salinas Valley State Prison

Exhibit "E"



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



### Institutional Level Assignment Notice

**Date:**     November 20, 2023

**To:**     AHDOM, BILAL (T28813)
#D  002 1111001LX
Salinas Valley State Prison
P. O. Box 1020
Soledad, CA 93960-1020

**Tracking #:**   SVSP HC 23001274

**Due Date:**   1/12/2024

The Health Care Grievance Office has accepted your health care grievance for response.  If you need additional information regarding your health care grievance, contact the health care grievance coordinator at your institution.

California Code of Regulations, Title 15, Section 3999.226(c), states "The grievant has the right to submit one health care grievance every 14 calendar days, unless it is accepted as an expedited grievance.  The 14 calendar day period shall commence on the calendar day following the grievant's last accepted health care grievance." Health care grievances submitted in excess of these limitations may be subject to rejection per California Code of Regulations, Title 15, Section 3999.234(a)(1).

If you have additional health care needs, you are advised to utilize approved processes to access health care services in accordance with California Correctional Health Care Services policy.

*(signature)*

Health Care Grievance Office Representative
Salinas Valley State Prison

Exhibit "I"

## ADA/Effective Communication Patient Summary

**As of:** 10/12/2021 07:50

### Patient Information

**NAME:** AHDOM, BILAL
**CDCR:** T28813

### Disability Placement Program

**Current DPP Code(s):**
* DPW

**DPP Verification/Accommodation Date:** 05/18/21 9:15:46 PDT

**Current Housing Restrictions/Accomodations:**
* No Rooftop Work/Hazardous Restriction
* Lifting Restriction
* Extra Time for Meals
* Special Cuffing
* Transport Vehicle With Lift
* Limited Wheelchair User
* Full time Wheelchair User
* Inmate Attendant/ Assistant
* Bottom Bunk
* Ground Floor- No Stairs
* Barrier Free Wheelchair Acces

### Methods of Communication

**SLI:**

**Primary Method:**

**Secondary Method:**

**Interview Date:**

### Developmental Disability Program

**Current DDP Code:**

**Effective Date:**

**Adaptive Support Needs:**

### Testing of Adult Basic Education (TABE)

**TABE Score:** 12.9

**TABE Date:** 09/24/2004 00:00

### Learning Disabilities

**Learning Disabilities:**

### English Proficiency

**LEP:** No

**Primary Language:** English

### Durable Medical Equipment

**Current ISSUED DME:**
* Commode Chair Permanent
* Eyeglass Frames Permanent
* Mobility Impaired Disability Vest Permanent
* Pressure Reducing Mattresses Permanent
* Wheelchair Permanent
* Other Permanent:wedge/pillow

### MHSDS

**MHLOC:** GP

RECEIVED
HCCAP
FEB 0 1 2022

file:///C:/Temp/64/dovf1fee9b6-e419-492c-8000-56facecdd411.htm

10/12/2021

## ADA/Effective Communication Patient Summary

**As of:** 10/24/2023 13:07

### Patient Information

**NAME:** AHDOM, BILAL
**CDCR:** T28813

### Disability Placement Program

**Current DPP Code(s):**
 * DPW

**DPP Verification/Accommodation Date:** 05/18/21 9:15:46 PDT

**Current Housing Restrictions/Accomodations:**
 * No Rooftop Work/Hazardous Restriction
 * Lifting Restriction
 * Extra Time for Meals
 * Special Cuffing
 * Transport Vehicle With Lift
 * Limited Wheelchair User
 * Full time Wheelchair User
 * Inmate Attendant/ Assistant
 * Bottom Bunk
 * Ground Floor- No Stairs
 * Barrier Free Wheelchair Acces

### Methods of Communication

**SLI:**

**Hearing Primary:**

**Hearing Secondary:**

**Speech Primary:**

**Speech Secondary:**

**Vision Primary:**

**Vision Secondary:**

**Interview Date:**

### Reading Level

**Reading Level:** 12.9

**Reading Level Date:** 09/24/2004 00:00

### Learning Disabilities

**Learning Disabilities:** No

### English Proficiency

**LEP:** No

**Primary Language:** English

### Durable Medical Equipment

**Current ISSUED DME:**
 * Commode Chair Permanent
 * Eyeglass Frames Permanent
 * Incontinence Supplies Permanent
 * Mobility Impaired Disability Vest Permanent
 * Wheelchair Permanent
 * Other Permanent:wedge/pillow

**Dental Prosthetic:**
 * Upper Denture Type: None
 * Lower Denture Type: None
 * Night Guard: Yes

**Dental Prosthetic Date:** 11/09/22 13:22:00 PST

### MHSDS

**MHLOC:** GP

Exhibit

"F"



CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**

## CLAIMANT GRIEVANCE RECEIPT ACKNOWLEDGMENT

**Offender Name:** AHDOM, BILAL                    **CDC#:** T28813

**Date:** 01/16/2024

**Current Location:** SVSP-Facility D            **Current Area/Bed:** D 002 1111001L

**From:** Office of Grievances at Salinas Valley State Prison

**Re:** Log # 000000506188

The California Department of Corrections and Rehabilitation Office of Grievances at Salinas Valley State Prison received your grievance on 01/16/2024. Your grievance has been assigned for review and response.

Pursuant to California Code of Regulations, title 15, the Office of Grievances will complete its review no later than 03/17/2024.

Please be informed that the Office of Grievances will not respond to any inquiries about the status of a grievance prior to the date shown above.

CDCR SOMS OG/T300
CLAIMANT GRIEVANCE RECEIPT ACKNOWLEDGMENT

STATE OF CALIFORNIA                                                           DEPARTMENT OF CORRECTIONS AND REHABILITATION
**REASONABLE ACCOMMODATION REQUEST**
**CDCR 1824 (Rev. 09/17)**

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| SVSP | 506188 | SVSP JAN 1 6 2024 Office of Grievance Received |

\*\*\*\*\*\*\*\*\*\*\***TALK TO STAFF IF YOU HAVE AN EMERGENCY**\*\*\*\*\*\*\*\*\*\*\*

**DO NOT** use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC.

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | HOUSING |
|---|---|---|---|
| Adam | T28813 | Ed. | D2-111 |

INSTRUCTIONS:
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**
Unable to sleep more 40 minutes due to awakening chronic back pain. After April 2023 chronic back pain examination and X-ray, my current issue DME order for pressure resisting mattress was discontinued pursuant to medical policy change. Because of the removal (DME) from my U.H.R. (medical file) custody contends there's nothing in the medical records to indicate a need for a double mattress.

**WHY CAN'T YOU DO IT?**
Unable to order a pressure reducing mattress to aid in abating chronic spinal pain allowing on mobility to sleep throughout the night.

**WHAT DO YOU NEED?**
Due to my inability to no longer possess, purchase or be provided a pressure reducing mattress (DME). Is requesting a reasonable accommodation in the form of the chrono to allow me to have a double mattress, and to have the chrono(s) entered into the record and my U.H.R.

*(Use the back of this form if more space is needed)*

**DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?**    Yes ☒    No ☐    Not Sure ☐

List and attach documents, if available:    SEE U.H.R.

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

_____         01/03/24
**INMATE'S SIGNATURE**                  **DATE SIGNED**

Assistance in completing this form was provided by:

_____         _____         _____
Last Name                First Name               Signature

Exhibit "G"

John Patrick Cello, M.D.
54 Lower N. Terrace
Tiburon, CA 94920

This represents my written report in the case of *Bilal Adom v. Scott Ladd, M.D.*

I am a physician licensed to practice medicine in the State of California. I received my bachelor's degree in biology, Summa Cum Laude, from Providence College in 1965. I then attended Harvard Medical School where I obtained my medical degree in 1969. From 1969 – 70, I completed an internship at Cornell-New York Hospital, following by a residency in internal medicine at Peter Bent Brigham Hospital from 1970 – 72. From 1972 – 73, I completed a research fellowship in hepatology-biochemistry at the VA Hospital in Washington, DC, and from 1975 – 77, I completed a gastroenterology fellowship at UCSF.

I have been board certified in internal medicine since 1972 with subspecialty certification in gastroenterology since 1977. From 1977 – 97, I was the Chief of Gastroenterology at San Francisco General Hospital. Since 2007, I have been the Medical Director of the Bariatric Surgery Center at UCSF. Also since 2007, I have been a Professor of Medicine and Surgery at UCSF, and I am an attending physician at both UCSF and San Francisco General Hospital. Since July 1, 2021, I have been a Professor Emeritus of Medicine and Surgery at UCSF. I have extensive experience with evaluating patients for incontinence issues, including urinary and fecal.

For more details of my qualifications, including a list of publications authored in the past 10 years, please see a true and correct copy of my curriculum vitae which is attached as Exhibit A.

My charges for serving as an expert are as follows: $850.00 per hour for record review; $1,075 per hour for deposition testimony; $2,000.00 for preparation of written reports; and $1,400 per hour for trial testimony.

It is my opinion that Scott Ladd, M.D. complied at all times with the applicable standard of care. The medical records and Scott Ladd, M.D.'s Declaration both confirm that he only saw the Plaintiff on a single visit (December 7, 2021), that he had been previously denied "incontinence supplies", and that when Dr. Ladd saw Plaintiff, there was no medical indication for incontinence supplies. After performing an evaluation of Plaintiff, including taking a medical history, there was no evidence which substantiated Plaintiff's demand for "incontinence supplies." Despite this, Dr. Ladd's decision to prescribe oxybutynin was entirely appropriate under the circumstances and complied with the standard of care.

I will also be expressing opinions on causation and damages. In this regard, it is my opinion that Plaintiff did not suffer any injury or damage as a result of Dr. Ladd's decision not to provide Plaintiff with the requested "incontinence supplies." In this regard, Plaintiff previously was seen by Dr. Faye Montegrande on September 10, 2021, and he requested "incontinence supplies" from Dr. Montegrande at that time. Dr. Montegrande determined that "incontinence supplies" were not warranted, and apparently prescribed oxybutynin as well. Thereafter, Plaintiff confirms that he did not have his "incontinence supplies" from September 10, 2021 until his visit with Dr. Ladd on

1

Exhibit

"H"

1    ROB BONTA
     Attorney General of California
2    CHRISTOPHER H. FINDLEY
     Supervising Deputy Attorney General
3    ERIC MIERSMA
     Deputy Attorney General
4    State Bar No. 190819
       600 West Broadway, Suite 1800
5      San Diego, CA 92101
       P.O. Box 85266
6      San Diego, CA 92186-5266
       Telephone: (619) 738-9061
7      Fax: (619) 645-2061
       E-mail: Eric.Miersma@doj.ca.gov
8    *Attorneys for Defendants*
     *R. Mojica, S. Sawyer, M. Lotersztain, M.D., F.*
9    *Montegrande, M.D., California Department of*
     *Corrections and Rehabilitation, and M. Atchley*

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

| 15 | | |
|---|---|---|
| 16 | BILAL ADOM, | 4:22-cv-07150-JSW |
| 17 | Plaintiff, | DECLARATION OF F. MONTEGRANDE, M.D., IN SUPPORT |
| 18 | v. | OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| 19 | CDCR, et al., | |
| 20 | Defendants. | Judge:       The Honorable Jeffrey S. White |
| | | Trial Date:  None Set |
| | | Action Filed: November 15, 2022 |

21

22      I, F. Montegrande, M.D., declare,

23      1.    I am a Physician and Surgeon who at the time relevant to this lawsuit was working at

24  Salinas Valley State Prison.

25      2.    I examined Plaintiff Adom on September 10, 2021 after he returned from a visit to an

26  off-site ophthalmology appointment with Dr. K. Rasheed. All inmates returning from off-site

27  medical appointments are seen by on-site medical staff to ensure any prescriptions and treatment

28  recommendations are provided.

1

3. Plaintiff Adom presented in a wheelchair and refused to get on the exam table for the examination. With Plaintiff Adom's consent, I performed a standard extremity strength test and reflex test while he was seated in his wheelchair. The strength test consists of me gently pushing against the patient's extended arms and legs, one at a time, while asking the patient to resist the pressure as best as they are able. The strength test does not involve any striking of the patient.

4. I also performed a standard leg reflex exam by gently tapping Plaintiff Adom's legs beneath the patella to measure his reflexes. This test is performed with a small rubber reflex hammer.

5. I did not perform a full body exam. I did not examine Plaintiff Adom for incontinence issues, or prescribe or discontinue any incontinence supplies, because he was only present for a follow-up after an off-site ophthalmology appointment. I did not document the strength and reflex test because only issues related to the outside ophthalmology are required to be documented.

6. CNA B. Rubio was present during the examination. Plaintiff Adom did not complain about any pain during the exam.

7. I reviewed Plaintiff Adom's medical records and there is no evidence of any injury caused by my examination and no evidence that he sought any medical attention for any injuries he alleges were caused by my examination.

8. My review of Plaintiff Adom's medical records also show that his incontinence supplies were discontinued in August 2021 when he was transferred from Alpha yard to Delta yard. Thus, his incontinence supplies were discontinued before I saw him on September 10, 2021.

9. Dr. Rasheed continued a prescription for Latanoprost eye drops and Plaintiff Adom expressed concern that this prescription had been discontinued.

10. I only examined Plaintiff one time, on September 10, 2021.

11. The medical records I reviewed indicate I was Plaintiff's Primary Care Provider on October 1, 2021. However, Registered Nurse P. Guillen conducted Plaintiff's exam on October

2

1, 2021. I did not perform the October 1, 2021 exam and do not recall ever speaking to Plaintiff about the results of that exam.

I declare under penalty of perjury that I have read this document, and its contents are true and correct to the best of my knowledge.

Executed on this _26TH_ day of September in the year 2023 in _Wasco_, California.


/s/

F. MONTEGRANDE, M.D.


SF2023801143
84154200.docx

3

1.
2.
3.
4.
5.
6. VERIFICATION
7.
8.
9.   I, Bilal Adom, declare under penalty of perjury under the laws of the State of
10. California and the U.S.A. that the foregoing documents i.e., Opposition Motion, Motion For
11. Appointment of Counsel, Supporting Affidavits and Exhibits are true and correct and that
12. this declaration was executed on January 25th, 2024, at Soledad, California.
13.
14.
15. Bilal Adom
16. Declarant
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.

Proof of Service

Case Name: Bilal Adam v. CDCR, et al.          No. 4:22-cv-07150-JSW

I hereby declare that I am over the age of 18 and the Plaintiff of the cause within.

I further declare that I have caused to be mailed, the foregoing documents to the below listed addresses/parties to the within cause: Opposition Motions To the Defendants Motions For Summary Judgment; Motion For Appointment of Counsel; Supporting Affidavits; Notice of Opposition Motion; Proposed Order Denying Defendants Motion, and Exhibits:

State of California
Department of Justice
Office of The Attorney General
600 W. Broadway, Suite 1800
P.O. Box 85266
San Diego, CA 92186-5266

Zenere Cowden and Stoddard APC
2005 De La Cruz Blvd., Suite 240
Santa Clara, CA 95050

I declare under penalty of perjury under the laws of the State of California and the U.S.A the foregoing is true and correct and that this declaration was executed on January 28th, 2024, at Soledad, California.

Bilal Adam
Declarant