UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILAL ADOM,<br><br>    Plaintiff,<br><br>    v.<br><br>CDCR, et al.,<br><br>    Defendants. | Case No. 22-cv-07150-JSW<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 36, 37 |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against officials at Salinas Valley State Prison ("SVSP"). After reviewing the complaint under 28 U.S.C. § 1915A, the Court concluded Plaintiff stated cognizable claims against Defendants Warden M. Atcherly, Chief Medical Officer S. Sawyer, R. Mojica, Dr. Montegrande, Dr. Scott Ladd, and Dr. Loterzstain for violating his Eighth Amendment rights, and against the California Department of Corrections and Rehabilitation ("CDCR") for violating his rights under the Americans with Disabilities Act ("ADA"). Two summary judgments are before the Court, one by Defendant Dr. Ladd and the other by the remaining Defendants. Plaintiff opposed both motions, and Defendants replied. For the reasons discussed below, the motions for summary judgment are GRANTED.

## DISCUSSION

I. **Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material

1  fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the
2  nonmoving party. *Id.*

3        The party moving for summary judgment bears the initial burden of identifying those
4  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine
5  issue of material fact. *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving
6  party has met this burden of production, the nonmoving party must go beyond the pleadings and,
7  by its own affidavits or discovery, set forth specific facts showing there is a genuine issue for trial.
8  *Id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material
9  fact, the moving party wins. *Id.*

10       At summary judgment, the judge must view the evidence in the light most favorable to the
11 nonmoving party. *Tolan v. Cotton*, 570 U.S. 650, 656-57 (2014).  If more than one reasonable
12 inference can be drawn from undisputed facts, the trial court must credit the inference in favor of
13 the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**II.   Analysis**

    1.   Eighth Amendment

        a.   Incontinence Supplies

17 Plaintiff claims Defendants violated his Eighth Amendment rights in addressing his
18 requests for supplies for incontinence[1] during a four-to-five-month period in late 2020.

19       Deliberate indifference to a prisoner's serious medical needs violates the Eighth
20 Amendment's proscription against cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S.
21 97, 104 (1976).  To prevail on such a claim, a prisoner-plaintiff must show a "serious medical
22 need," and that the defendants' "response to the need was deliberately indifferent." *Jett v. Penner*,
23 439 F.3d 1091, 1096 (9th Cir. 2006).

24       A "serious" medical need exists if the failure to treat a prisoner's condition could result in
25 further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d
26 at 1059 (citing *Estelle*, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or

---

[1] Plaintiff indicates such supplies consist of "adult diapers."

2

1 patient would find important and worthy of comment or treatment; the presence of a medical
2 condition that significantly affects an individual's daily activities; or the existence of chronic and
3 substantial pain are examples of indications that a prisoner has a serious need for medical
4 treatment. *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).
5 Even if there were a triable issue as to whether Plaintiff's incontinence constituted a "serious"
6 medical condition under the Eighth Amendment, there is no triable issue Defendants were
7 deliberately indifferent to that condition.

8       A prison official is deliberately indifferent if the "official knows that inmates face a
9 substantial risk of serious harm and disregards that risk by failing to take reasonable measures to
10 abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). An official is liable if the official
11 "knows of and disregards an excessive risk to inmate health or safety; the official must both be
12 aware of facts from which the inference could be drawn that a substantial risk of serious harm
13 exists, and he must also draw the inference." *Id.* at 837. For deliberate indifference to be
14 established, there must be a purposeful act or failure to act on the part of the defendant and
15 resulting harm. *Simmons v. G. Arnett*, 47 F.4th 927, 933 (9th Cir. 2022). "Under this standard, an
16 inadvertent failure to provide adequate medical care, differences of opinion in medical treatment,
17 and harmless delays in treatment are not enough to sustain an Eighth Amendment claim." *Id.*
18 Neither is a claim of medical malpractice or negligence. *See Toguchi v. Chung,* 391 F.3d 1051,
19 1060 (9th Cir. 2004). "A difference of opinion between a prisoner-patient and prison medical
20 authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662
21 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a "mere difference of medical opinion" among
22 medical professionals as to the need to pursue one course of treatment over another does not raise
23 a "material question of fact" regarding the issue of deliberate indifference. *Toguchi*, 391 F.3d at
24 1058; *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving
25 choices between alternative courses of treatment, a prisoner must show that the chosen course of
26 treatment was medically unacceptable under the circumstances, and was chosen in conscious
27 disregard of an excessive risk to [the prisoner's] health." *Toguchi*, 391 F.3d at 1058 (citation and
28 internal quotations omitted).

The undisputed evidence shows that since Plaintiff reported incontinence in December 2020, he received incontinence supplies with the exception of a temporary four-to-five-month period from September 2021 to January 2022.[2] The undisputed evidence shows that Defendants were not deliberately indifferent to his medical needs relating to incontinence during that time. He was examined multiple times by medical professionals: by a nurse on October 1, 2021, by Defendant Dr. Ladd on December 7, 2021, and by Defendant Dr. Loterzstain on December 29, 2021. All of these medical professionals found no indication his incontinence had a medical cause or he had a medical need for incontinence supplies. Defendant Dr. Montegrande, who examined him for an unrelated ophthalmology issue on September 10, 2021, and an outside doctor who reviewed Plaintiff's medical records and submitted a declaration as an expert witness, also agreed there was no indication his incontinence was caused by a medical condition or he had a medical need for incontinence supplies. Dr. Loterzstain explained:

> Adom had a remote history of spinal surgery and stroke, but the urinary incontinence issue was only one year old and the cause was not clear.

(ECF No. 37-4 at ¶ 4.) Even though Plaintiff's history of incontinence "was vague, and he reported that he was able to urinate while awake and the incontinence happened in his dreams" (*id.* at ¶ 7), on December 29, 2021, Dr. Loterzstain ordered a resumption of incontinence supplies for Plaintiff (which he began receiving the following month), medication (Flowmax), and a urine culture to rule out infection, and she performed a prostate examination to determine whether he had an enlarged prostate. In addition, and also during the time period when he was not receiving incontinence supplies, he received extra clothing, priority access to showers in the event of an accident, and the above-described examinations by medical professionals in response to his complaints about his incontinence issues.

This evidence, even when viewed in a light most favorable to Plaintiff, does not indicate that his incontinence was untreated or ignored by the Defendants, or any purposeful failure to act by them. *See Simmons*, 47 F.4th at 933. At most, the circumstances presented by the evidence

---

[2] In June 2023, at his deposition, Plaintiff indicated he was still receiving incontinence supplies, and he does not assert they have been discontinued since that time.

1 indicate a temporary suspension of incontinence supplies and a disagreement about whether
2 incontinence supplies were medically indicated. As such, the evidence does not create a triable
3 factual question as to whether his Eighth Amendment rights were violated. *See id.*; *see also*
4 *Franklin*, 662 F.2d at 1344.

5       Plaintiff cites a medical record from December 7, 2021, listing "urinary incontinence"
6 among his diagnoses, a record from September 2021 listing incontinence supplies among his ADA
7 accommodations, and a record from May 2023 of a medical examination finding abnormal "post
8 void residual bladder volume" and an indicating an "impression" of "urinary retention." (ECF No.
9 43 at 24-28.) At most, these records show a difference of opinion among medical professionals as
10 to whether Plaintiff had a medical need for incontinence supplies, which also does not create a
11 triable issue as to whether Defendants were deliberately. *See Toguchi*, 391 F.3d at 1058.
12 Moreover, that incontinence supplies were approved by officials as an ADA accommodation does
13 not necessarily mean he had a medical condition causing the incontinence, as opposed to him
14 simply reporting that it had occurred regularly. Any evidence that his incontinence was found in
15 May 2023 to have a medical cause does not support a finding that Defendants knew that was the
16 case, and ignored it, approximately 18 months earlier. And the record listing incontinence as a
17 "diagnosis" is not signed by any medical professional, there is no indication on it that it was
18 endorsed by a medical professional, nor does it indicate there was a medical cause of Plaintiff's
19 incontinence –- as opposed to a clinical observation of incontinence symptoms. For these reasons,
20 the records cited by Plaintiff do not create a triable factual question as to whether Defendants were
21 deliberately indifferent to his medical needs.

22       In addition, the fact Plaintiff had incontinence episodes[3] does not indicate there was a
23 *medical* cause of incontinence such that he had a *medical* need for incontinence supplies, however.
24 He also argues he should have received additional tests from Defendants (in addition to the urine
25 culture and prostate exam he received), but this is another example of a disagreement between him

---

[3] They were largely at night, and he asserts it hurt his spine to get out of bed and caused him emotional and mental distress. While Plaintiff asserts he was at risk of rashes and sores, he states he did not sustain any.

5

and medical professionals over the medically appropriate treatment he should receive, which does not create a triable factual question as to whether Defendants were deliberately indifferent to his medical.

The evidence, when viewed in a light most favorable to Plaintiff, does not create a triable issue that Defendants *knew* he had a medical need for incontinence supplies that they disregarded, and shows they provided him medical appointments, tests, and medication for his incontinence, and after a temporary period of him not receiving such supplies, resumed them when the incontinence and his requests continued. Under these circumstances, the evidence does not reasonably establish more than a disagreement over whether the supplies were medically required and a temporary lack of such supplies, which *Simmons*, *Toguchi*, *Sanchez*, and *Franklin*, does not create a triable factual issue as to whether Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

b. <u>Prostate exam by Dr. Loterzstain</u>

Plaintiff claims Dr. Loterzstain violated his Eighth Amendment rights by conducting a prostate exam. Dr. Loterzstain explained the reasons of the exam as follows:

> I performed a prostate exam to check for an enlarged prostate after receiving Plaintiff Adom's permission to do so. I explained to him that a blood test showed a normal PSA, so he probably did not have prostate cancer, but the rectal exam was to check for benign prostatic hypertrophy (BPH).
>
> The exam showed a mildly enlarged and indurated prostate, so I prescribed Tamsulosin (Flomax).
>
> Plaintiff . . . did not complain of any pain during the prostate exam. The exam proceeded normally without any issues or abnormalities. Certified Nursing Assistant Y. Botello was present behind a privacy screen during 19 the exam.

(ECF No. 37-4 at ¶¶ 4-8.) The exam lasted four or five seconds. Plaintiff states he did not consent to the exam, which Dr. Loterzstain disputes. Even assuming for purposes of the present motion that Plaintiff did not consent, however, this on its own would not amount to deliberate indifference to his serious medical needs. Indeed, the evidence shows the exam was medically indicated to investigate Plaintiff's incontinence, and there is no evidence it was not. Indeed, Plaintiff complains about not being sufficiently tested for a medical condition that may have caused his

6

1    incontinence, and this was just such a test, such that *not* performing the exam may have been

2    medically improper.  Under these circumstances, there is no triable issue as to whether conducting

3    the brief (albeit uncomfortable) exam amounted to deliberate indifference to Plaintiff's serious

4    medical needs in violation of the Eighth Amendment.

            c.    Examination by Dr. Montegrande

6    Plaintiff claims during an ophthalmology follow-up appointment with Defendant Dr.

7    Montegrande on September 10, 2021, she conducted tests that caused him pain.[4]  He asserts she

8    conducted the tests roughly and caused abrasions, which Dr. Montegrande denies.  But even

9    assuming Plaintiff's account is correct, not every malevolent touch by a prison guard gives rise to

10   a federal cause of action, and the Eighth Amendment's prohibition of cruel and unusual

11   punishment necessarily excludes from constitutional recognition de minimis uses of physical

12   force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

13   *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  It is undisputed Plaintiff arrived at the appointment in

14   a wheelchair, and when he would not get onto the examination table, Dr. Montegrande conducted

15   tests of his extremity strength and reflexes.  These tests entailed pushing on his shoulders and

16   limbs while he resisted and using a small hammer below his knee.  There is no evidence that these

17   tests were anything but standard tests and medically necessary under the circumstances to

18   determine whether Plaintiff could get onto the examination table.  And even accepting as true

19   Plaintiff's assertion Dr. Montegrande conducted the tests roughly, there is no evidence supporting

20   an inference that she did so with more than de minimis force.  Accordingly, there is no triable

21   factual issue as to whether Dr. Montegrande violated Plaintiff's Eighth Amendment rights when

22   she examined him.

23        2.    ADA Claim

24   Plaintiff claims the CDCR failure to give him incontinence supplies between September

25   2021 and January violated his rights under the ADA.  In his opposition to the present motion,

26   Plaintiff does not address or oppose Defendant CDCR's argument for summary judgment on this

---

[4] He also alleges she was "rude," which is not an Eighth Amendment violation.

1  claim. A review of the evidence in the record shows that it no triable factual question as to
2  whether the CDCR violated the ADA with respect to providing Plaintiff with incontinence
3  supplies.
4      Title II of the ADA, which applies to public entities, provides: "No qualified individual
5  with a disability shall, by reason of such disability, be excluded from participation in or be denied
6  the benefits of the services, programs, or activities of a public entity, or be subjected to
7  discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the
8  ADA, a plaintiff must allege: "(1) he is an individual with a disability; (2) he is otherwise
9  qualified to participate in or receive the benefit of some public entity's services, programs, or
10  activities; (3) he was either excluded from participation in or denied the benefits of the public
11  entity's services, programs, or activities, or was otherwise discriminated against by the public
12  entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his]
13  disability." *McGary v. City of Portland,* 386 F.3d 1259, 1265 (9th Cir.2004) (internal
14  quotations omitted).
15      To the extent Plaintiff seeks injunctive relief, the evidence is undisputed that Plaintiff has
16  been receiving incontinence supplies since January 2022. As there is no evidence that the claimed
17  lack of accommodation is continuing, any claim for injunctive relief is moot.
18      Monetary damages are not available under Title II of the ADA absent a showing of
19  discriminatory intent.[5] *See Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). To
20  show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity.
21  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference requires:
22  (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to
23  act upon that likelihood. *Id.* at 1139. The first prong is satisfied when the plaintiff identifies a
24  specific, reasonable and necessary accommodation that the entity has failed to provide, and the
25  plaintiff notifies the public entity of the need for accommodation, or the need is obvious even if no
26  request is made, or required by statute or regulation. *Id.* The second prong is satisfied by showing

---

[5] The Court incorrectly concluded in its order of service the damages request was barred by the Eleventh Amendment.

8

that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. *Id.* at 1139-40. The entity's duty is to undertake a fact-specific investigation to gather from the disabled individual and qualified experts sufficient information to determine what constitutes a reasonable accommodation, giving "primary consideration" the requests of the disabled individual. *Id.* The second prong is not satisfied if the failure to fulfill this duty to accommodate is a result of mere negligence, such as "bureaucratic slippage" or where the entity simply "overlooked" a duty to act. *Id.*

There is no evidence Plaintiff was excluded from accommodation *because of* his disability, which he identifies as his incontinence. He claims the appropriate accommodation was incontinence supplies, but the reason the CDCR did not provide him those supplies was that medical professionals determined he did not have a medical need for them, not because Defendants were deliberately discriminating against him due to his incontinence. Indeed, it is undisputed Defendants provided him a host of accommodations, including incontinence supplies for over two years, and for the four to five months when he did not receive such supplies, they gave him medical attention, tests, incontinence medication, priority shower access, and additional clothing and towels. The evidence at most reasonably indicates a disagreement about treatment for Plaintiff's conditions, not a deliberate exclusion from programs, services, or activities because of a disability. Consequently, there is no triable factual question as to whether Plaintiff can recover monetary damages from the CDCR under the ADA.

## CONCLUSION

For the reasons explained above, Defendants' motions for summary judgment are GRANTED. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: June 25, 2024

JEFFREY S. WHITE
United States District Judge